# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs November 26, 2002

## STATE OF TENNESSEE v. RANDALL SCOTT

**Direct Appeal from the Criminal Court for Davidson County**
**No. 96-C-1362    Cheryl Blackburn, Judge**

---

**No. M2001-02911-CCA-R3-CD - Filed October 28, 2003**

---

A Davidson County jury convicted the defendant, Randall Scott, of rape of a child and aggravated sexual battery. This Court affirmed the defendant's convictions upon his direct appeal, see State v. Randall Scott, No. 01C01-9708-CR-00334, 1999 WL 547460, at *14 (Tenn. Crim. App. at Nashville, July 28, 1999), but the Tennessee Supreme Court reversed and remanded the case for a new trial, see State v. Scott, 33 S.W.3d 746 (Tenn. 2000). At the conclusion of the defendant's second trial, a second Davidson County jury convicted the defendant of rape of a child and aggravated sexual battery, and the trial court subsequently ordered the defendant to serve an aggregate thirty-five-year sentence for his convictions. The defendant now brings the instant direct appeal of his convictions and sentence alleging five grounds of error. The defendant argues that the trial court (1) erroneously admitted the evidence that the victim identified the defendant as her perpetrator in the first trial, (2) erroneously admitted certain hearsay testimony as an adoptive admission by a party opponent, (3) erroneously instructed the jury that they could draw an inference of guilt if they concluded that the defendant had concealed or destroyed or had attempted to destroy or conceal evidence of his crime, (4) failed to separate the defendant's charges for rape of a child and aggravated sexual battery, as was required by law, and (5) ordered the defendant to serve an excessive sentence. After a thorough review of the defendant's claims and the record, we find that several of the defendant's allegations were previously determined by this Court pursuant to his first direct appeal and that none of his claims merit relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID G. HAYES and NORMA MCGEE OGLE, JJ., joined.

Jeffrey A. DeVasher, Assistant Public Defender, (on appeal), and J. Michael Engle, Assistant Public Defender, (at trial), for the appellant, Randall Scott.

Paul G. Summers, Attorney General & Reporter; Elizabeth B. Marney, Assistant Attorney General; Victor S. Johnson, District Attorney General; Bill Reed and Roger Moore, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## Factual Background

At approximately dusk on April 7, 1995, the victim, L.M.F.,[1] who was nine-years-old at the time of the incident and who was living at 1044 Chickamauga Avenue in Nashville, Tennessee, walked from her residence to a nearby Revco Drug Store to purchase some earrings. During her walk to the Revco, she saw the defendant leave his residence at 1042 Chickamauga Avenue and walk towards the Revco, as well. The victim recognized the defendant because she had seen him in her neighborhood several times. She testified that he was wearing a red tank top and jean shorts with carpenter pockets.

The victim entered the store and purchased some earrings and candy. The defendant purchased a bottle of malt liquor and some cigarettes and exited the store before the victim. After the victim exited the store and was preparing to cross the street, the defendant stopped the oncoming traffic, allowing her to cross. As the victim approached an alley on Chickamauga Avenue, the defendant grabbed the victim from behind, covered her mouth, and steered her into the alley. The victim attempted to flee from the defendant, but the defendant thwarted the victim's escape by throwing a rock at the victim, hitting her in her back. The defendant then ordered the victim to lie down and removed his shorts and the victim's shorts and underpants. The defendant touched the victim on her stomach and her vagina and then penetrated her anally with his penis.

After the attack, the victim reported the incident to her father who in turn contacted the police. The victim related the details of her attack to a female police officer and was subsequently transported to General Hospital for care. The victim was transferred via ambulance from General Hospital to Vanderbilt Hospital, where a physician put the victim under general anesthesia in order to examine her and create a rape kit. The physician who examined the victim reported that the victim had sustained two injuries, a welt to her back which was consistent with an injury resulting from a thrown rock, and tears to her anus, which were caused by penetration and consistent with damage caused by penile penetration.

Another resident of 1042 Chickamauga Avenue, Teresa Gooch, testified at trial. Ms. Gooch reported that on the day of the incident, the defendant left their residence to purchase some cigarettes for her grandmother, another resident. However, the defendant was gone for an unusually long amount of time, and when he did return, his shorts were muddied. Ms. Gooch testified that the defendant attempted to enter the bathroom to change his clothing, but was unable to do so because Ms. Gooch's mother, also a resident, was in the bathroom. The defendant then changed his clothes in the hallway, Ms. Gooch assumed, and entered his bedroom, where Ms. Gooch was seated. Once in the bedroom, he placed his soiled shorts and shirt partially under his bed. The police arrived at 1042 Chickamauga Avenue shortly thereafter looking for someone matching the defendant's

---

[1]   It is the policy of this Court to refrain from referring to child abuse victims by name.

description. During their search of the house, Ms. Gooch directed the police to the defendant's clothing next to his bed, which the police seized along with the defendant's shoes and a partially full malt liquor bottle.

The police sent both the defendant's and the victim's clothing to laboratories for DNA testing. Lab technicians concluded that only the victim's DNA was found on the victim's clothing, but that the victim could not be excluded as the source of DNA on the defendant's clothing. No semen or sperm were found on the victim's or defendant's clothing nor in the victim's rape kit.

Ricky Knight, Ms. Gooch's father, also resided at 1042 Chickamauga Avenue. Mr. Knight testified that after the defendant had left to purchase cigarettes on the day of the incident and had been gone for an unusually long amount of time, he looked for the defendant on Gallatin Road but failed to find him. When Mr. Knight left the house again to walk to the nearby Burger King, he saw a young girl emerging from an alley and a man whom he was unable to identify behind her. Ms. Gooch testified that after the defendant returned to their residence, he had a conversation with Mr. Knight that Ms. Gooch overheard. Mr. Knight told the defendant that he was "pitiful for messing with the little white girl," to which the defendant responded that "everybody fool with her."

Shortly after the incident, the victim failed to identify the defendant as her perpetrator in a line-up. However, his appearance on the day of the lineup was different from his appearance on the day of the incident. On the day of the incident, the defendant was freshly shaven and wore his hair down in a "Jerry curl" style. On the day of the lineup, the defendant had stubble and was wearing his hair back in a ponytail. The victim was able to identify the defendant as her perpetrator at the first trial. However, the victim was unable to identify the defendant at the second trial and testified that her memory of her experience as a nine-year-old was less clear now with the passage of seven years. Additionally, she assumed that her perpetrator's appearance had also changed with the passage of those seven years. She further affirmed that she had testified truthfully at her first trial.

At the conclusion of proof, the jury found the defendant guilty of both rape of a child and aggravated sexual battery. As noted above, pursuant to a sentencing hearing, the trial court ordered the defendant to serve a thirty-five year aggregate sentence consisting of consecutive sentences of twenty-five years for his rape of a child conviction to be served at 100% and ten years for his aggravated sexual battery conviction to be served at 30%. As noted earlier, the defendant raises five issues in this appeal; he challenges the propriety of (1) the introduction of the victim's identification of the defendant in his first trial, (2) the admission of certain hearsay as an adoptive admission, (3) the jury instruction regarding concealed evidence, (4) the allowance of two separate convictions for rape of a child and aggravated sexual battery, and (5) his sentence.

### Admission of Victim's Prior Identification of Defendant from First Trial

The defendant argues that the trial court erred by allowing the state to introduce hearsay evidence of the victim's identification of the defendant as her perpetrator during the first trial on

these charges. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). As a general rule, hearsay is not admissible at trial except as provided by the rules of evidence or otherwise by law. See Tenn. R. Evid. 802. However, "[t]he determination of whether a statement is hearsay and whether it is admissible through an exception to the hearsay rule is left to the sound discretion of the trial court." State v. Stout, 46 S .W.3d 689, 697 (Tenn. 2001). As such, this Court will not reverse a trial court's ruling regarding the admission or exclusion of hearsay evidence absent a clear showing that the court abused its discretion. See id.

In the instant case, the trial court found that the victim's statement of previous identification was admissible under Tennessee Rule of Evidence 803(1.1), which allows admission of "[a] statement of identification of a person made after perceiving the person if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement." Tenn. R. Evid. 803(1.1). When ruling on the admissibility of this statement of prior identification, the trial court also relied on State v. Stout, 46 S.W.3d 697 (Tenn. 2001). When discussing the admissibility of certain hearsay statements under Rule 803(1.1), the supreme court enumerated four requirements that must be met before the statement could be introduced. See id. at 698. That party seeking admission of the statement must establish

> (1) that the declarant made an identification of a person;
> (2) that the identification was made after perceiving the person;
> (3) that the declarant testified at the hearing or trial in which the prior identification was introduced; and
> (4) that the declarant was subject to cross-examination about the statement.

Id. The court also relied on the discussion of Rule 803(1.1) in the treatise Tennessee Law of Evidence. This treatise explains the policy behind Rule 803(1.1), stating that the rule allows admission of a declarant-witness's prior identification as substantive evidence because the declarant-witness is testifying and available for cross-examination at the time of the admission of this prior identification. See Neil P. Cohen et al., Tennessee Law of Evidence § 8.05[2] (4th ed. 2000). According to Tennessee Law on Evidence, this exception is typically used in criminal cases where a witness makes an out of court identification of the defendant and then later identifies the defendant again in court. See id. The witness's earlier statement of identification may then be admitted under Rule 803(1.1). See id. The earlier identification was made closer in time to the incident for which the defendant is being tried, and the admission of this earlier identification essentially bolsters the credibility of the witness who made both identifications. See id. However, in this scenario, the authors of Tennessee Law of Evidence opine that there is normally no great need for the admission of the earlier statement of identification since the witness who made the earlier identification identifies the defendant at trial, as well. See id. Rather, the need for the admission of a statement of earlier identification arises when the declarant-witness either "cannot (or pretends to be unable to) identify the accused in the courtroom." Id. In such a rare instance, an extreme need for the admission of the out-of-court statement is created. See id.

The facts of the present case constitute such a rare case necessitating the need for admission of the victim's earlier statement of identification. The state sought to introduce the victim's prior statement of identification from the defendant's first trial after the victim testified during the second trial that she was not able to positively identify the defendant since the defendant's appearance had undoubtedly changed in the seven years between the incident and the current trial. The victim testified that when she identified the victim during the last trial, she had been truthful. Thus, since the victim was nine-years-old at the time of the incident and eleven-years-old at the time of the first trial, the trial court reasonably allowed introduction of the victim's prior identification in light of the fact that at the trial at issue here the now sixteen-year-old victim was unable to identify the defendant. Moreover, while the statement at issue was introduced at the conclusion of the victim's testimony, the victim was available for cross-examination by defense counsel about the truthfulness of this prior identification.

The defendant argues, as he did at trial, that the victim's statement was not admissible under 803(1.1) because the rule does not contemplate the admission of a prior inconsistent statement. The defendant characterizes the victim's statement of prior identification as a prior inconsistent statement based on the victim's inability to identify the defendant at his second trial. See Tenn. R. Evid. 613. We disagree. We do not find that the victim's testimony at the second trial in which she stated that she was unable to identify the defendant due to a change in his appearance over a significant amount of time is inconsistent with her identification of the defendant at his first trial, only two years after the rape and sexual battery. Accordingly, we find that Rule 803(1.1), which specifically contemplates the factual scenario in the instant case, see Neil P. Cohen, et al., Tennessee Law of Evidence § 8.05[2] (4th ed. 2000), is the proper rule governing the admission of the victim's prior identification of the defendant when she was unable to identify him at a later court proceeding due to the lapse of five years.

**Defendant's Adoptive Admission**

The defendant alleges that the trial court erred by admitting Ms. Gooch's testimony recounting Ricky Knight's accusation of the defendant and the defendant's response to that accusation. The defendant contends that Mr. Knight's accusation is "rank hearsay" that does not fall within the purview of any evidentiary rule allowing its admission. The trial court admitted Mr. Knight's statement and the defendant's response to the statement under Tennessee Rule of Evidence 803(1.2)(B).

Rule 803(1.2)(B) provides a hearsay exception for "a statement in which the party has manifested an adoption or belief in its truth." Tenn. R. Evid. 803(1.2)(B). Ms. Gooch testified that she overheard a conversation between Mr. Knight and the defendant that took place shortly after the defendant returned from his errand to Revco. She testified that Mr. Knight told the defendant that he was "pitiful for messing with a little white girl," to which the defendant responded, "whatever, man, everybody fool [sic] with her." We find that the trial court properly found that these statements are admissible under the hearsay exception for adoptive admissions because the defendant's response

to Mr. Knight's accusation indicated that he was admitting that he had indeed "messed with" the victim.  See id.

The defendant argues that these statements are inadmissible under Rule 803(1.2)(B) because this rule requires that a prerequisite to the admission of the defendant's adoptive admission is that the statement to which the defendant is responding be either non-hearsay or fall within a recognized exception to the hearsay rule.  He argues that Mr. Knight's statement is rank hearsay and accordingly bars the admission of the defendant's response to that statement.  However, we can find no such requirement in either the text of Rule 803(1.2)(B) or in any caselaw discussing the admissibility requirements for statements admitted under this rule.  See Tenn. R. Evid. 803(1.2)(B); see, e.g., State v. Heflin, 15 S.W.3d 519 (Tenn. Crim. App. 2000) (finding that a witness's testimony recounting the defendant's agreement to statements made by his co-defendant was admissible under Rule 803(1.2)(B)); State v. Roland John Welch, No. 01-C-01-9601-CC-00005 , 1997 WL 414418, at *4 (Tenn. Crim. App. at Nashville, July 23, 1997) (finding that a witness's testimony recounting the defendant's co-conspirator's statements expressing his criminal intent and the defendant's subsequent silence and transportation of his co-conspirator to the crime scene was admissible, inter alia, under Rule 803(1.2)(B)).  Thus, the defendant's argument lacks merit.

### Propriety of Jury Instruction Regarding Concealed Evidence

The defendant argues that the trial court erroneously instructed the jury that if it found that the defendant had indeed concealed or attempted to conceal evidence of his crimes, the jury could decide what weight to give that finding and it could infer guilt from the attempted or actual concealment of evidence.  The defendant objects to this instruction now, as he did at trial, on the basis that the instruction is not supported by the evidence introduced at trial.  The defendant made this same allegation of error in his direct appeal of his first trial.  See State v. Randall Scott, No. 01C01-9708-CR-00334, 1999 WL 547460, at *14 (Tenn. Crim. App. at Nashville, July 28, 1999).  However, in his instant appeal, the defendant seems to assert that Ms. Gooch's testimony reporting that the defendant changed from his soiled clothing when returning from his errand and put this clothing under his bed is substantially different from her testimony at his first trial, thus requiring our reconsideration of the issue.  Specifically, the defendant asserts that Ms. Gooch testified during cross-examination that the defendant's clothing was visible to anyone who entered his bedroom, thus making a finding that the defendant concealed or attempted to conceal his clothing insupportable.

The law-of-the-case doctrine bars appellate consideration of issues that have been previously determined in an earlier appeal of the same case.  See State v. Preston Carter, No. W2000-02204-SC-DDT-DD, 2003 WL 22146113, at *5 (Tenn., Sep. 18, 2003) (Southwest Reporter cite not yet available) (citing State v. Jefferson, 31 S.W.3d 558, 561 (Tenn. 2000)).  As in the instant case, when an initial appeal results in a remand for a new trial, in the new trial and any subsequent appeals, both the trial and appellate courts are bound by the earlier appellate decisions.  See id.  Reconsideration of the previously adjudicated issue is only warranted if, inter alia, the evidence offered at the second hearing is substantially different from the evidence offered at the initial proceeding.  See id.

We do not find that Ms. Gooch's testimony at the second trial substantially differed from her testimony at the second trial. During the first trial, Ms. Gooch testified that after the defendant had changed his clothing, he "hid the soiled clothes under the bed." Randall Scott, 1999 WL 547460, at *14. During the second trial, Ms. Gooch testified during direct examination that after changing his clothing, the defendant "put [his soiled clothes] up under the bed." During cross-examination, the following colloquy took place between the defense attorney and Ms. Gooch:

Q:      . . . . Now if I understand you correctly, you are saying that upon coming back into the room, he hid these clothes that you've just identified underneath the bed?
A:      Yes, sir.
Q:      That is what you are saying?
A:      Uh-huh (meaning yes).
Q:      All right, and it was necessary for you to pull them out and show them to the police who couldn't see them otherwise; is that right?
A:      They didn't let me pull them out. I pointed them out.
Q:      All right, but the police could not see these clothes because they were hidden?
A:      I guess not. They asked me where they was at [sic] and I told them up under the bed.
Q:      Well, that is what I am trying to understand, ma'am. I want to understand that these things had been hidden underneath the bed or if they were laying [sic] out there where the police officers could just look them straight up and see them; which way?
A:      Actually, it was like underneath, you know, half way like. You could see them if you go [sic] in the room and just peep up under the bed. They wasn't [sic] all the way up under. They was [sic], you now, close by, like up, when you coming towards.
Q:      If I had walked into that room, without you helping, and I had looked around that room, would I have been able to see those garments that you are telling us about?
A:      Yes, sir, you would have been able to see them.

Ms. Gooch's testimony seems to indicate that the defendant's clothes were at least partially hidden, but perhaps visible if one was to "peep up under the bed." Ms. Gooch did not testify that the defendant had not hidden his clothes, and thus we cannot say that her testimony "substantially differed" from her testimony at the defendant's first trial. Even assuming, arguendo, that Ms. Gooch's testimony is substantially different from her earlier testimony thus warranting our reconsideration of this issue, we find that Ms. Gooch's testimony presented enough evidence to allow the jury to make a fact-finding as to whether the defendant had indeed concealed the clothing that he had worn earlier that day. Accordingly, because the proof was sufficient to support a finding

of concealment, the trial court did not err by instructing the jury on the issue of concealment of evidence. See State v. Phipps, 883 S.W.2d 138, 149 (Tenn. Crim. App. 1994). Thus, this issue lacks merit.


## Propriety of Separate Convictions for Rape of a Child and Aggravated Sexual Battery

The defendant argues that the trial court impermissibly allowed the defendant to receive separate convictions for rape of a child and aggravated sexual battery, arguing that allowing separate convictions for each count violates his due process rights per State v. Anthony, 817 S.W.2d 299 (Tenn. 1991), and his right against double jeopardy. However, the defendant raised this precise issue in his first direct appeal, and this Court found his argument meritless. See State v. Randall Scott, No. 01C01-9708-CR-00334, 1999 WL 547460, at *15 (Tenn. Crim. App. at Nashville, July 28, 1999). As discussed supra, this Court may therefore only revisit this issue if, inter alia, the evidence in the second trial differs substantially from the evidence presented at the first trial. See State v. Jefferson, 31 S.W.3d 558, 561 (Tenn. 2000). The victim testified at the defendant's first trial that the defendant digitally penetrated her "front private part" and then "placed his penis inside her anus." Randall Scott, 1999 WL 547460, at *16. In the second trial, the victim testified that the defendant touched her vagina and stomach and then anally penetrated her. We find these two testimonies to be substantially similar, thus barring our re-consideration of this previously determined issue. See Jefferson, 31 S.W.3d at 561.


## Sentencing Challenge

The defendant challenges his effective thirty-five-year sentence as excessive, arguing that the trial court erroneously applied three enhancement factors, failed to apply two applicable mitigating factors, and incorrectly ordered his sentences to be served consecutively. In the defendant's first direct appeal, he challenged his sentence as excessive alleging the same grounds of error, and this Court found that challenge meritless. We can find nothing in the record of the defendant's second trial that warrants a different conclusion.

The defendant challenges the applicability of enhancement factors (2), (6), and (7) to his sentences. See Tenn. Code Ann. § 40-35-114(2), (6), (7) (Supp. 2002). In the defendant's first appeal, we found that the record supported the trial court's application of enhancement factor (2), that "[t]he defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range." Id. § 40-35-114(2). We found that the defendant's admitted weekly use of illegal drugs for the past twenty years constituted criminal behavior triggering the application of this factor. See Randall Scott, 1999 WL 457460, at *19. During the defendant's second sentencing hearing, the trial court relied on the defendant's two previous convictions in addition to those necessary to establish his range. As additional support for the application of this factor, the state introduced evidence that the defendant had continued his drug

use while incarcerated. We find that these facts are sufficient to warrant the application of this factor.

The defendant also challenges the trial court's application of enhancement factor (6), that the defendant treated the victim with exceptional cruelty during the commission of his crimes. See Tenn. Code Ann. § 40-35-114 (6) (Supp. 2002). In the context of the defendant's first appeal, we found that the application of this factor was supported by the defendant's use of vulgar language when raping the victim, the victim's testimony that he dragged her behind the shed in order to rape her, and experts' testimony indicating that the defendant used an excessive amount of force in order to anally penetrate the victim. In the second trial, the victim testified that the defendant used unpleasant language when raping her. An expert recounted that the victim stated that the defendant had thrown a rock at her in order to impede her escape. There was also medical testimony that the victim sustained a deep tear to her anus due to forceful penile penetration. We find that this evidence similarly supports the application of this factor.

The defendant also challenges the trial court's application of a third factor, factor (7), that the victim suffered particularly great personal injuries. See id. § 40-35-114 (7). In the defendant's first appeal, we upheld the application of this factor based on the evidence of the victim's severe emotional trauma. We found that the victim's inability to articulate the defendant's actions and the testimony of a psychological examiner indicating that the victim would require much additional therapy supported the application of this factor. In the second trial, some four years later, the victim was still unable to articulate the nature of the sexual crimes that the defendant performed on her and therefore resorted to writing down the details of her attack, allowing the prosecutor to share her written responses with the jury. While the state did not introduce expert testimony regarding the amount of psychological care that the victim still required, the trial court addressed this issue in its sentencing order. The trial court stated that "while the physical wounds to the victim have healed, their impact on the mental state of the victim is still as raw and vicious as they were over six (6) years ago." Based on the victim's inability to articulate the details of her rape and battery and based on the trial court's factual findings regarding this matter, we find that the trial court correctly applied this factor to the defendant's sentences.

The defendant further argues, as he did during his first direct appeal, that the trial court erroneously failed to apply two mitigating factors. As we stated in our opinion,

> The defendant also complains that the trial court erred by failing to apply the mitigating circumstance that the defendant did not have a sustained intent to violate the law, but instead committed an impulsive act. See Tenn. Code Ann. § 40-35-113(11). In our view, this factor is inapplicable. The facts support an inference that the defendant followed the victim to the Revco and then followed her when she left. When she tried to escape, he subdued her. These facts suggest there was a sustained intent to commit the unlawful acts. The defendant also contends that his favorable record while incarcerated should be given some weight under the "catch all" provision of Tenn. Code Ann. § 40- 35-113(13). That the defendant has a good

-9-

record of behavior while incarcerated could arguably be a mitigating circumstance. In our view, however, it would be entitled to only marginal consideration.

Randall Scott, 1999 WL 547460, at *21. We find that this analysis is applicable to the facts introduced at the second trial, as well. The evidence introduced at the second trial similarly supports an inference that the defendant followed the victim into and out of the Revco and used physical force to thwart her escape. Thus, the trial court's refusal to mitigate the defendant's sentence based on a finding that he committed an impulsive act was proper. Moreover, the defendant's use of illegal drugs during his incarceration reflects that his "good" behavioral record was entitled to little weight, if any at all. Thus, the defendant's assertion that the trial court should have applied these two factors in order to lessen his sentence is unpersuasive.

Finally, the defendant asserts, as he did in his first appeal, that the trial court erroneously ordered him to serve his twenty-five-year sentence for rape of child consecutively to his ten-year-sentence for aggravated sexual battery. In the defendant's first appeal, we found that the victim's severe emotional damage coupled with the fact that the defendant committed the instant crimes while serving a probationary sentence warranted consecutive sentencing. See Randall Scott, 1999 WL 547460, at *24. In its sentencing order after the second trial, the trial court found that consecutive sentences were justified considering that the defendant committed the crimes while on probation, that the victim suffered severe emotional damage as a result of the defendant's action, and in order to protect the public from the defendant's further criminal conduct and to avoid a depreciation of the seriousness of the offenses. We find that the trial court's findings when sentencing the defendant for a second time similarly support an imposition of consecutive sentences, as they did when the defendant was sentenced to serve consecutive sentences after the first trial.

In sum, the defendant's sentencing challenge, which is virtually identical to his sentencing challenge that we addressed in our disposition of his first appeal, lacks merit.

## Conclusion

For the foregoing reasons, we find that none of the defendant's allegations merit relief. Accordingly, the judgment of the trial court is AFFIRMED.

_____
JERRY L. SMITH, JUDGE