STATE of Tennessee, Appellant,

v.

Dennis D. ANTHONY, Appellee.

STATE of Tennessee, Appellant,

v.

James Marvin MARTIN, Appellee.

Supreme Court of Tennessee,
at Knoxville.

Sept. 23, 1991.

Charles W. Burson, Atty. Gen. & Reporter, Kathy M. Principe, Asst. Atty. Gen., Ellen H. Pollack, Special Asst. Atty. Gen., Nashville, for appellant.

Mark E. Stephens, Knoxville, for appellee Anthony.

Leonie Kilpatrick Cohen, Knoxville, for appellee Martin.

## OPINION

DAUGHTREY, Justice.

We have before us two criminal cases in which the defendants were convicted of both armed robbery and aggravated kidnapping, in each instance growing out of a single criminal episode. Because the cases involve similar facts, raise similar issues, and were decided on the same basis by the intermediate appellate court, they can be resolved in a single opinion.

On a superficial level, the question presented is whether the facts in each case support convictions for both robbery and kidnapping. The real issue involves the propriety of a kidnapping conviction where detention of the victim is merely incidental to the commission of another felony, such as robbery or rape. It is an issue that has been addressed by various panels of the Court of Criminal Appeals over the years.[1] But it has never been presented to this Court, and thus we have had no opportunity to address the more profound question implicated by the facts in these cases, i.e., what legal standard should be applied in deciding whether a separate conviction for kidnapping can be sustained. We now take the occasion to resolve this issue.

At the outset, it is helpful to identify the principles implicated in the discussion that follows, and to separate the relevant from the irrelevant. These cases do not involve double jeopardy analysis under either the state or federal constitution—there is no question that the offenses of robbery and

---

1. See, e.g., Cherry v. State, 539 S.W.2d 51 (Tenn. Crim.App.1976) (assault with intent to rape and kidnapping); Jackson v. State, 540 S.W.2d 275 (Tenn.Crim.App.1976) (escape and kidnapping); Brown v. State, 574 S.W.2d 57 (Tenn.Crim.App. 1978) (robbery and kidnapping); Morgan v. State, 582 S.W.2d 94 (Tenn.Crim.App.1979) (rape and kidnapping); State v. Rollins, 605 S.W.2d 828 (Tenn.Crim.App.1980) (robbery and kidnapping); State v. Mackey, 638 S.W.2d 830 (Tenn.Crim.App.1982) (burglary, robbery, assault and kidnapping); State v. Jackson, 697 S.W.2d 366 (Tenn.Crim.App.1985) (larceny, robbery and kidnapping); State v. Davis, 741 S.W.2d 120 (Tenn.Crim.App.1987) (robbery, rape, and kidnapping). Most of these cases were litigated and/or decided on the basis of double jeopardy, rather than the due process analysis involved in this case.

kidnapping have separate elements and that dual convictions, even for conduct arising from the same criminal episode, would not violate double jeopardy provisions. At the same time, the conviction and punishment of a defendant for kidnapping, based on facts insufficient to sustain that conviction, would clearly violate the due process guarantees found in both constitutions. It is from this vantage point that we proceed to a review of the facts in these two cases and of the action taken in the trial and appellate courts.

### 1. State v. Anthony

The episode giving rise to the convictions in *State v. Anthony* occurred shortly after 11:00 p.m. one night, when the defendant, Dennis Anthony, and another man robbed the Shoney's Restaurant on Lovell Road in Knox County. The restaurant had just closed, and three employees—Christopher Smith, Brian Seals, and Jimmy Joyce Livingood—were emptying trash into dumpsters behind the building when the defendant and his companion drove up in a red Camaro. After requesting a cigarette from Seals, the defendant asked Seals and Livingood if they knew where Magnolia Avenue was. Before they could answer, the defendant, who was carrying a revolver, got out of the car and ordered the three employees to lie on the ground near the dumpsters. Leaving his confederate to watch Smith, Seals, and Livingood, the defendant entered the restaurant through the back door. The accomplice detained the three employees until the defendant returned and they fled the scene together.

Manager Al Kesterson was in the front section of the restaurant when he heard a shout. He turned around to find the defendant pointing a gun at him. The defendant ordered Kesterson to accompany him to the office. As they went, the defendant spotted another employee, waitress Laurie Lexvold. The defendant grabbed Lexvold, held the gun to her head, and took both Kesterson and Lexvold back through the kitchen into the office. When the defendant demanded that the safe be opened, Kesterson informed him that the safe was in the front of the restaurant by the cash register. At the defendant's orders, Lexvold remained in the office while the two men returned to the front of the restaurant, where the defendant directed Kesterson to open the safe and a separate cash box. After taking some of the contents of the safe and the money from the box, the defendant headed through the kitchen on his way out of the restaurant.

While the defendant was making his way through the building, he happened upon another employee, Floyd Lundy, Jr., as Lundy was coming out of the restroom. The defendant "stuck his gun in [Lundy's] face" and told him to "get back in the men's room and stay there." Lundy remained in the restroom until the defendant left the restaurant.

The defendant and his accomplice left as soon as the defendant came out of the building. Once they were certain that the two robbers had gone, the victims called the police. The entire episode took slightly more than five minutes.

The defendant was convicted of the armed robbery of Al Kesterson, the armed burglary of the restaurant, and the aggravated kidnappings of Kesterson, Lexvold, Lundy, Smith, Livingood, and Seals. The Court of Criminal Appeals, in a split opinion, held that none of the kidnapping convictions could stand. Two members of the panel concurred in the following reasoning:

> Without an obvious and clear break in the chain of events that took place at the Shoney's, we hold that only one offense occurred, i.e., armed robbery. Unless independent and separate fact patterns for both the armed robbery and the aggravated kidnapping can be proven, appellant can be convicted of only the armed robbery.

> \*     \*     \*     \*     \*     \*

> With the robbery beginning with the detention of the three employees outside and culminating in a matter of a few minutes with the robbery and detention of the other three inside, there was but one intent and one crime. (Citation omitted.) Summed up, there was no clear

break in the events to support the separate crime of kidnapping.

*State of Tennessee v. Dennis D. Anthony*, Court of Criminal Appeals at Knoxville, slip op. at 2, 1990 WL 83416 (June 21, 1990) (citation omitted).

While agreeing with the majority's decision to set aside the kidnapping convictions involving the various employees inside the restaurant, the third member of the panel dissented as to the kidnapping convictions involving the three employees detained outside the restaurant. He wrote, "Even though the outside kidnappings ... were committed for the purpose of facilitating the robbery, obviously, the facts of the kidnapping were not *essential parts* or *elements* of the robbery, and both the robbery and the kidnapping convictions can stand." *Id.* Reid, J., dissenting (emphasis in original).

## 2. State v. Martin

The episode underlying the convictions in *State v. Martin* also involved a robbery. The defendant, James Marvin Martin, entered the office of the C.H. McMillan Insurance Agency on the Asheville Highway in Knoxville around 12:30 p.m. one afternoon. C.H. McMillan, Sr., the owner of the agency, was talking with a customer on the telephone when he heard the building's back door open. McMillan turned around to see the defendant standing behind him with a gun in his hand.

Martin first ordered McMillan to hang up the telephone. He then took the phone out of McMillan's hand and told McMillan to lie on the floor. The defendant ordered Ruth Needham, a secretary who had been working at a nearby desk, to give him "all the money." Needham gave him $150.00 of the agency's money and a dollar from her own billfold. Martin also demanded and got $41.00 from McMillan.

Holding McMillan by the upper arm, the defendant next ordered McMillan and Needham to go through a door into a hallway. At first he instructed them to enter a door at the end of the hall that led into a dental laboratory. He later changed his mind and ordered both of them to go into

the men's restroom and stay there. Once inside, McMillan slammed the door shut and locked it from the inside. Almost as soon as he heard the defendant go out the back door, McMillan hurried out of the restroom and observed the defendant as he entered his automobile. More cautious, Needham waited a minute or two before coming out. The entire episode encompassed only about four minutes.

The defendant was convicted of the separate armed robberies of McMillan and Needham and of the aggravated kidnappings of both victims. Again, the Court of Criminal Appeals held that the defendant was guilty only of the armed robberies of the two victims and that the evidence did not support the convictions for aggravated kidnapping. In a unanimous opinion, the court concluded that

... it is clear that appellant placed the victims in the restroom for the sole purpose of facilitating his getaway. There was no evidence presented that appellant locked them in; on the contrary, Mr. McMillan locked the door from the inside. Nor was there evidence that appellant ordered them to stay in there a certain amount of time under threat of harm. The entire episode took place in a matter of minutes or less. It is, therefore, obvious that the detention of the two victims was an integral part of the robbery. We, therefore, do not find from the evidence the necessary break in the acts to support separate charges for two crimes as is required by *[State v.] Mackey*, 638 S.W.2d 830 (Tenn.Crim.App.1982).

*State of Tennessee v. James Marvin Martin*, Court of Criminal Appeals at Knoxville, slip op. at 3 (July 24, 1990).

## 3. Analysis

In seeking to overturn the intermediate court decisions in these two cases, the state relies chiefly on our analysis in *State v. Black*, 524 S.W.2d 913 (Tenn.1975), in which we adopted the well-known "*Blockburger* test" for determining when to sustain multiple convictions which are based upon the same acts or transaction. The broad question, of course, is whether or not

the offenses in question constitute the "same offense" under the double jeopardy clause. As *Black* notes, multiple convictions do not violate double jeopardy if "[t]he statutory elements of the two offenses are different, and neither offense is included in the other." *Id.* at 920, citing *Iannelli v. United States*, 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975), in which the United States Supreme Court held that:

> In determining whether separate punishment might be imposed, *Blockburger* requires that courts examine the offenses to ascertain "whether each [statutory] provision requires proof of a fact which the other does not." As *Blockburger* and other [double jeopardy] decisions applying its principle reveal ... the Court's application of the test focuses on the statutory elements of the offense.

*Id.* at 785, 95 S.Ct. at 1293, quoting *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932).

In this appeal, by contrast, the result does not turn on an examination of the *statutory elements* of the two offenses for which Anthony and Martin were convicted. The essential elements of kidnapping and robbery are obviously separate and distinct, and simultaneous convictions on these two charges would not necessarily violate the rule in *Blockburger*. But since the dispositive question here does not raise double jeopardy implications, much of the analysis which the state brings to bear on the question is, simply, irrelevant. Of course, it is also true that our failure to address this issue in the past has left the state with virtually no relevant precedent from this Court to invoke. Nevertheless, if the Tennessee cupboard is somewhat bare,

there are numerous cases in other jurisdictions from which to draw sustenance.[2]

The problem recurs frequently because modern, broadly-drawn kidnapping statutes, like the Tennessee statute in these cases,[3] no longer require common law elements once necessary in kidnapping, such as secrecy and asportation. Literally construed, the offense of kidnapping defined in these statutes at times

> ... could literally overrun several other crimes, notably robbery and rape, and in some circumstances assault, since detention and sometimes confinement, against the will of the victim, frequently accompany these crimes * * * It is a common occurrence in robbery, for example, that the victim be confined briefly at gunpoint or bound and detained, or moved into and left in another room or place.

*People v. Levy*, 15 N.Y.2d 159, 256 N.Y.S.2d 793, 204 N.E.2d 842, 844 (1965), cert. den. 381 U.S. 938, 85 S.Ct. 1770, 14 L.Ed.2d 701. *See also* Note, "A Rationale of the Law of Kidnapping," 53 Colum.L.Rev. 540, 554–558 (1953). Various approaches have been adopted by other courts in an attempt to solve this problem, and their decisions are an unacknowledged source of the "integral part" analysis applied by the Court of Criminal Appeals in these two cases.

If there can be said to be a leading Tennessee case in this area, it is *Brown v. State*, 574 S.W.2d 57 (Tenn.Crim.App.1978). There the defendant repeatedly came to the victim's motel room—the first time to use the telephone, the second to obtain money to use in a pay phone. On his third visit the defendant put a knife to the victim's throat, tied him up, placed him in a closet, and threatened to kill him. Brown left and

---

2. They are collected at Annot., 43 A.L.R.3d 699 (1972). *See also* n. 7, *infra*.

3. At the time the two offenses in this appeal were committed, in 1986 and 1988, T.C.A. § 39-2-301 (aggravated kidnapping) mandated the conviction of anyone "who unlawfully seizes, confines, inveigles, entices, decoys, abducts, conceals, kidnaps or carries away another with the felonious intent to (1) cause the other to be confined secretly against his will; (2) detain the other against his will; or (3) send the other out of the state against his will...."

Under the superseding statute which took effect on November 1, 1989, as amended effective April 30, 1990, T.C.A. § 39-13-303, kidnapping is defined as false imprisonment "under circumstances exposing the other person to substantial risk of bodily injury...." In turn, T.C.A. § 39-13-302 provides that false imprisonment occurs when a person "knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty."

returned twice, the last time having been persuaded by his companions to rob the victim rather than kill him. The defendant thereupon took the victim's watch and $19.00 and left the motel.

Brown was convicted of armed robbery and kidnapping. The major issue on appeal was whether asportation and secrecy are essential elements in prosecutions for simple kidnapping.[4] The Court of Criminal Appeals held that they are not.[5] Instead, it said, the intent with which the defendant confines, inveigles, or entices away another is the essential element of the offense.

In closing, the court briefly addressed the defendant's final contention:

> The Appellant's claim that the State should have been required to elect whether to proceed on a charge of robbery or a charge of violation of T.C.A. § 39–2601 is not supported by the facts of this case.
>
> If the facts on which the kidnapping charge is based are an integral part or essential element of the other felony being committed, then a separate conviction for the two offenses cannot be had. *People v. Adams*, 34 Mich.App. 546, 192 N.W.2d 19 (1971). If the facts of the kidnapping are separate and apart from the other felony and are not an integral part or essential element of the other felony, then two convictions may be had. *Cherry v. State*, 539 S.W.2d 51 (Tenn.Cr. App.1976); *Jackson v. State*, 540 S.W.2d 275 (Tenn.Cr.App.1976).
>
> In this case, the acts of violation of T.C.A. § 39–2601 were completed prior to and were unconnected with an essential element of the robbery. Therefore, the State could seek and secure a separate conviction without violating the double jeopardy rule. *State v. Black*, 524 S.W.2d 913 (Tenn.1975).

574 S.W.2d at 62.

There is no doubt that the holding in *Brown* is based in large part on the double jeopardy analysis utilized by this Court in *State v. Black, supra,* 524 S.W.2d 913. The *Brown* court's citation to *Black* makes that much clear.[6] However, the further citation to *People v. Adams*, 34 Mich.App. 546, 192 N.W.2d 19 (1971), indicates that the holding in *Brown* is also rooted in a series of decisions from other states, notably *Adams, People v. Levy, supra,* and *People v. Daniels*, 71 Cal.2d 1119, 80 Cal. Rptr. 897, 459 P.2d 225 (1969), that were not decided on double jeopardy grounds. The decision of the Court of Criminal Appeals in the two present cases is much more consistent with the *Adams–Levy–Daniels* line of authority than with most Tennessee cases following *Brown*. The reference in *Brown* to *Adams*, never fully developed or explained, raises the issue of whether Tennessee has implicitly adopted the approach taken in those cases, and if not, whether it should do so now explicitly.

Because the statutory elements of kidnapping and other associated felonies rarely coincide, double jeopardy analysis has frequently been rejected in other jurisdictions as a method of resolving the inequities that may result from simultaneous convictions of kidnapping and of a separate felony, like robbery, that inherently involves some detention or asportation of the victim. *See e.g., State v. Hall*, 280 S.C. 74, 310 S.E.2d 429, 431 (1983); *State v. Miller*, 336 S.E.2d 910, 913 (W.Va.1985). The courts often rule that, despite the wording of the relevant statutes, they were not intended to apply in these situations, or that to so apply them would allow abuse of prosecutorial discretion or violate due process. *See, e.g., People v. Daniels, supra; People v. Adams, supra; People v. Levy, supra; State v. Buggs*, 219 Kan. 203, 547 P.2d 720 (1976); *State v. Fulcher*, 294 N.C. 503, 243 S.E.2d 338 (1978).

The extreme example is presented in *People v. Levy*, a case in which the defen-

---

4. See n. 3, *supra.*

5. In *State v. Henderson*, 620 S.W.2d 484, 486–487 (Tenn.1981), this Court implicitly approved the holding in *Brown* that asportation and secrecy are not required to prove kidnapping.

6. *Cherry v. State* and *Jackson v. State*, also cited in *Brown* for the "integral part"/"essential element" rule, were actually decided on double jeopardy grounds. Both cases upheld multiple convictions for kidnapping and another felony committed as part of one criminal episode.

dants accosted a husband and wife as they arrived at their house, forced them at gunpoint into their car, and drove the couple a distance of 27 blocks over a 20–minute period, during which time they robbed the victims of their jewelry and a wallet. The New York Court of Appeals reversed the kidnapping convictions as a matter of law and left the first degree robbery conviction standing, finding that the restraint involved was incidental to the robbery and of the type that had long been treated as an inherent part of such other offenses as robbery, rape, and the like. In *People v. Daniels,* the California Supreme Court reversed kidnapping convictions where the victims had been forced to move about in their apartments during the commission of the offenses of robbery and rape. Citing both *Levy* and *Daniels,* the Supreme Court of Michigan in *People v. Adams* reversed a kidnapping conviction where, during a prison disturbance, the defendant and other inmates seized a prison official at knife point and, threatening to kill the official, moved him from one part of the prison to another during negotiations.

By an overwhelming margin, the majority view in other jurisdictions is that kidnapping statutes do not apply to unlawful confinements or movements incidental to the commission of other felonies.[7] In general, three basic tests have evolved under the majority rule. The first is exemplified by *Adams, Levy,* and *State v. Innis,* 433 A.2d 646 (R.I.1981), cert. den. 456 U.S. 930, 102 S.Ct. 1980, 72 L.Ed.2d 447 (1982). It asks whether the confinement, movement, or detention was merely incidental to the accompanying felony or whether it was significant enough in and of itself to warrant independent prosecution. This is, in fact, the test referred to by the Court of Criminal Appeals in *Brown, supra,* 574 S.W.2d at 62. The *California* test adds to this question (*i.e.,* whether the kidnapping was incidental) the further question of whether the detention or movement substantially increased the risk of harm over and above that necessarily present in the accompanying felony. *People v. Daniels, supra,* 459 P.2d at 238 (movement within victims' business during course of robbery held not kidnapping); *see also People v. Timmons,* 4 Cal.3d 411, 93 Cal.Rptr. 736, 482 P.2d 648 (1971) (victims driving own car for some five blocks while defendant robbed them held not kidnapping); *People v. Thomas,* 3 Cal.App.3d 859, 83 Cal.Rptr. 879 (1970) (brief movement of young female victims during robbery from lighted street with pedestrians and motorists to darkened alley

---

7. For a sampling of opinions following the majority approach, *see Alam v. State,* 776 P.2d 345 (Alas.App.1989); *People v. Daniels, supra; People v. Bridges,* 199 Colo. 520, 612 P.2d 1110 (1980); *Tyre v. State,* 412 A.2d 326 (Del.1980); *Robinson v. United States,* 388 A.2d 1210 (D.C.App.1978); *Faison v. State,* 426 So.2d 963 (Fla.1983); *State v. Rich,* 305 N.W.2d 739 (Iowa 1981); *State v. Cabral,* 228 Kan. 741, 619 P.2d 1163 (1980); *State v. Buggs,* 219 Kan. 203, 547 P.2d 720 (1976); *State v. Estes,* 418 A.2d 1108 (Me.1980); *People v. Adams, supra,* 192 N.W.2d 19 [*but see People v. Wesley,* 421 Mich. 375, 365 N.W.2d 692 (1984) (rule does not apply where accompanying offense is murder because does not present danger of overcharging) ]; *Cuevas v. State,* 338 So.2d 1236 (Miss.1976); *Wright v. State,* 94 Nev. 415, 581 P.2d 442 (1978); *State v. Masino,* 94 N.J. 436, 466 A.2d 955 (1983); *People v. Levy, supra,* 204 N.E.2d 842; *State v. Fulcher, supra,* 243 S.E.2d 338; *State v. Logan,* 60 Ohio St.2d 126, 397 N.E.2d 1345 (1979); *State v. Garcia,* 288 Or. 413, 605 P.2d 671 (1980); *State v. Innis, infra,* 433 A.2d 646; *State v. Curtis,* 298 N.W.2d 807 (S.D.1980); *State v. Green,* 94 Wash.2d 216, 616 P.2d 628 (1980); *State v. Miller,* 336 S.E.2d 910 (W.Va.1985). *See also* Model Penal Code § 212.1 (1980) (requiring movement over a substantial distance or confinement for a substantial period of time). Several states, it must be noted, have refused to adopt this position. *See e.g., State v. Ring,* 131 Ariz. 374, 641 P.2d 862 (1982) (*en banc*) (double jeopary grounds); *State v. Briggs,* 179 Conn. 328, 426 A.2d 298 (1979), cert. den. 447 U.S. 912, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980) (rejecting *Levy, supra,* 204 N.E.2d 842, and its progeny); *Chambley v. State,* 163 Ga.App. 502, 295 S.E.2d 166 (1982) (any unlawful asportation sufficient to support kidnapping conviction); *Feller v. State,* 264 Ind. 541, 348 N.E.2d 8 (1976) (rejecting *People v. Adams,* 389 Mich. 222, 205 N.W.2d 415 (1973)); *State v. Maeder,* 229 Neb. 568, 428 N.W.2d 180 (1988) (double jeopardy not violated since neither kidnapping nor sexual assault is a lesser included offense of the other); *State v. Hall,* 280 S.C. 74, 310 S.E.2d 429 (1983) (double jeopardy grounds); *Rodriguez v. State,* 646 S.W.2d 524 (Tex.App.1982) (statute imposes no minimal requirement for restraint other than substantial interference with liberty); *State v. Simpson,* 118 Wis.2d 454, 347 N.W.2d 920 (1984) (kidnapping established regardless of incidental role to sexual assault).

**306**

held separate kidnapping). This test was utilized by the Court of Criminal Appeals in *State v. Rollins*, 605 S.W.2d 828, 830–1 (Tenn.Crim.App.1980). A more formulaic, although not substantially different, test is found in *State v. Buggs, supra*, 547 P.2d at 731, and has also been promulgated by the Florida Supreme Court in *Faison v. State*, as follows:

> [I]f a taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:
> (a) Must not be slight, inconsequential and merely incidental to the other crime;
> (b) Must not be of the kind inherent in the nature of the other crime; and
> (c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.

426 So.2d 963, 965 (Fla.1983), citing *State v. Buggs, supra*.

In examining these general guidelines, it must be remembered that individual cases are sometimes dependent upon the wording of the particular statutes being construed, and upon the clarity of local legislative intent. For example, the high court of a sister state has construed one of its statutes, Ky.Rev.Stat. § 509.050 (1990), specifically to exempt from criminal liability for kidnapping anyone who has committed another offense, where the "interference with the victim's liberty occurs immediately with and incidental to the commission of that offense." *Wood v. Commonwealth*, 567 S.W.2d 121 (Ky.1978); *Timmons v. Commonwealth*, 555 S.W.2d 234 (Ky.1977). Moreover, despite the rules, there is inevitably some unevenness in the application of the law to the facts, even within jurisdictions, principally because the determination of whether a detention or movement is incidental to another offense is highly dependent on the facts in each case.

Nevertheless, while we recognize the difficulties that Tennessee courts may face in applying a rule that lacks the apparent clarity of the "Blockburger test," we find ourselves in agreement with the majority view that holds double jeopardy analysis to be inadequate in resolving the question raised by this appeal. We conclude that the better rule is an amplification of the test applied by the Court of Criminal Appeals in its opinions in these two cases, that is, whether the confinement, movement, or detention is essentially incidental to the accompanying felony and is not, therefore, sufficient to support a separate conviction for kidnapping, or whether it is significant enough, in and of itself, to warrant independent prosecution and is, therefore, sufficient to support such a conviction. We further agree with the suggestion in *State v. Rollins, supra*, that one method of resolving this question is to ask whether the defendant's conduct "substantially increased [the] risk of harm over and above that necessarily present in the crime of robbery itself." *Id.*, 605 S.W.2d at 830.

We rest this holding not on a concern for constitutional protection against double jeopardy, but on our understanding of the constitutional guarantee of due process. In this regard, we note specifically the provisions of Article I, section 8 of the Tennessee Constitution.

Furthermore, we believe that this approach is fully consistent with the intent of the General Assembly in enacting the prohibition against kidnapping. As previously noted, every robbery, by definition, involves some detention against the will of the victim, if only long enough to take goods or money from the person of the victim. This does not mean that the legislature intended that every robbery should also constitute a kidnapping, even though a literal reading of the statute might suggest otherwise. We conclude that the courts' task is to apply the statute narrowly, so as to make its reach fundamentally fair and to protect the due process rights of every citizen, even those charged with robbery, rape, or the like.

### 4. Application of the Rule

■ Applying the test announced today to the facts of the two cases now before us, we find, first, that the judgment of the Court of Criminal Appeals reversing James

Marvin Martin's kidnapping conviction must be affirmed. Put simply, the facts in *State v. Martin* do not support convictions for both robbery and kidnapping, despite the fact that after Martin took money from McMillan and Needham, he forced them to go down a hallway and into the men's restroom. This action may well have facilitated his escape, but it did not substantially increase the risk of harm to the victims. Except for taking McMillan by the arm, the defendant did not physically restrain the victims or put them in increased danger of any harm. In fact, one of the victims locked the door from the inside of his own volition. Movement was limited to short distances within the general area. Such brief and limited detention during flight is normal in the course of a robbery and, on these facts, does not constitute a separate kidnapping offense. Martin's actions were clearly incidental to the robbery, and the Court of Criminal Appeals holding must therefore be sustained as to this defendant.

■ The result as to defendant Anthony is not as easily reached, because the facts present a closer case as to some of his six kidnapping convictions. However, we conclude that the intermediate court should be affirmed here also. Clearly, the restaurant manager, Kesterson, was not kidnapped. Although there was some interference with Kesterson's liberty when he was forced at gunpoint to open the safe, his movements in this regard were essentially incidental to the robbery. Indeed, they were part and parcel of that offense. Likewise, we do not find Anthony's treatment of employees Lexvold and Lundy to be sufficiently "significant in and of itself" to support separate convictions for kidnapping.

That leaves us to determine the propriety of the three verdicts returned against Anthony for kidnapping the remaining Shoney's employees, Smith, Seals, and Livingood, who were forcibly detained behind the restaurant while the actual robbery was going on inside.

Superficially at least, this conduct might appear adequate to constitute a separate offense. The dissenting judge on the Court of Criminal Appeals argued strenuously that these three convictions should be sustained because the facts giving rise to them were not "an *integral part* or *essential element* of the other felony." *State of Tennessee v. Dennis D. Anthony, supra,* Reid, J., dissenting (quoting *State v. Brown, supra,* 574 S.W.2d at 62) (emphasis in original).

While we acknowledge a debt to the *Brown* opinion, as constituting the starting point for the development of the rule announced today, we point out that this language from *Brown* is too narrow to provide a fair assessment of the sufficiency of proof with regard to kidnapping. The test is not whether the detention was an "integral part or essential element" of the robbery, but whether it was "essentially incidental" to that offense. We conclude that the activity in question here was incidental.

There is no significant difference between what happened to the employees who were inside the building and those who were not. The only distinguishing factor is their location at the time of the robbery. Indeed, had Smith, Seals, and Livingood been standing just inside the back door, rather than a few feet outside it, there would be no question that their detention was essentially incidental to the robbery.

We conclude that geography alone should not control the outcome in this case. Nothing that occurred in connection with the detention of Smith, Seals, and Livingood was sufficiently significant, in and of itself, to warrant separate convictions for their kidnapping. These three employees were held only briefly; they were not harmed in any way; nor were they forced to move to a different location where additional harm might have befallen them. They were not, in short, subjected to any "substantially increased risk of harm over and above that necessarily present in the crime of robbery itself."

Having concluded that not every robber can or should be held criminally liable for kidnapping, we nevertheless would not want this opinion interpreted to mean that a defendant can never be convicted of both offenses, simply because they arise out of the same episode. If, for example, the

**308**

three employees behind the restaurant had been taken hostage following the robbery, as was the case in *State v. Mackey*, 638 S.W.2d 830 (Tenn.Crim.App.1982), or if they had been moved from the scene of the robbery under circumstances giving rise to "a substantially increased likelihood of harm to the victims," as was the case in *State v. Rollins, supra*, 605 S.W.2d at 831, then the result might well be different from the one we reach here. Focusing solely on the facts in these two cases, however, we must conclude that the convictions for kidnapping cannot be sustained.

We therefore affirm the judgment of the Court of Criminal Appeals in both cases.

DROWOTA, O'BRIEN and ANDERSON, JJ., concur.

REID, C.J., not participating.