# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
December 19, 2006 Session

## STATE OF TENNESSEE v. THOMAS COBURN

**Appeal from the Criminal Court for Sullivan County**
**No. S46,918-19     R. Jerry Beck, Judge**

---

**No. E2005-02730-CCA-R3-CD - Filed August 9, 2007**

---

JAMES CURWOOD WITT, JR., J., concurring.

The prescribed due process analysis in cases of multiple prosecutions involving kidnapping is vexing to prosecutors and courts, if not to defenders, because of the infinite possibilities for factual permutations. The present case presents an apt opportunity to illustrate the analytical challenges and shortcomings.

Primarily, I write separately to emphasize that, but for the victim's effective resistance, the defendant could have committed rape – and in fact did commit attempted rape – at the site of his attack on the victim. Thus, had he moved the victim to or confined her in a more secluded location, such movement or confinement would have been deemed beyond that necessary to consummate the accompanying felony. *See State v. Dixon*, 957 S.W.2d 532, 535 (Tenn. 1997) (pointing out that "the movement [of the victim from a sidewalk] to the back of the vacant lot was not necessary for commission of the . . . assault" and holding that, therefore, the movement "exceeded that restraint necessary to consummate the act of attempted sexual battery"). I agree, however, that the defendant's confinement or movement of the victim was not "significant enough, in and of itself, to warrant independent prosecution." *See State v. Anthony*, 817 S.W.2d 299, 306 (Tenn. 1991).

I also would emphasize that the due process scuttling of the aggravated kidnapping conviction in the present case is not a function of evidence insufficiency. The evidence was clearly sufficient to support an aggravated kidnapping conviction via false imprisonment "[w]here the victim suffers bodily injury." *See* T.C.A. § 39-13-304(a)(4) (2003).

This last observation evokes still a third comment. The disinclination of our courts to apply the merger doctrine to remedy *Anthony*-infirm dual convictions is perplexing. Although published precedent mandates that, in such situations, the kidnapping conviction must be vacated and that charge dismissed, *see State v. Denton*, 938 S.W.2d 373, 378 (Tenn. 1996); *State v. Coleman*,

865 S.W.2d 455, 457 (Tenn. 1993); *State v. Taylor*, 63 S.W.3d 400, 410 (Tenn. Crim. App. 2001)(citing *State v. Carson*, 950 S.W.2d 951, 953 n. 3 (Tenn. 1997); *State v. Binion*, 947 S.W.2d 867, 872-73 (Tenn. Crim. App. 1996); *State v. Gregory*, 862 S.W.2d 574, 579 (Tenn. Crim. App.1993), we have consistently applied a merger remedy in the closely-related rubric of multiple convictions that violate double jeopardy principles, *see State v. Antonio D. Richardson*, No. M2005-01161-CCA-R3-CD, slip op. at 9-10 (Tenn. Crim. App., Nashville, May 4, 2006), *reh'g denied* (Sept. 7, 2006), *perm. app. granted* (Tenn. Jan. 29, 2007) (order on petition to rehear). Until *Anthony* is overruled, the merger doctrine is applied, or the *Anthony*-related murkiness is clarified by finer judicial filtering, prosecutors might be well advised to jettison pretrial the charge of the accompanying felony when it is an offense in a class lower than the kidnapping offense and when evidence of the kidnapping offense is strong. In resolving *Anthony* cases, the appellate courts are obliged to review the evidence adduced at trial, nuances of which may not have even been foreseeable pretrial by the prosecutor. For instance, the post-trial review of the present case not only reveals strong evidence of aggravated kidnapping, a Class B felony, but also an *Anthony* problem palpable enough that the risk of obtaining only a conviction of a Class C felony for attempt to commit rape could be viewed as unacceptable from a prosecutorial standpoint.

Finally, I wonder whether the necessity for using the *Anthony* due process regime was later obviated by *State v. Denton*, 938 S.W.2d 373 (Tenn. 1996), a case that expanded Tennessee's notion of double jeopardy principles. At the time of *Anthony*, double jeopardy analysis was largely focused upon the congruency of the statutory elements of two or more crimes pursuant to *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 182 (1932):

> "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not."

*State v. Black*, 524 S.W.2d 913, 919 [(Tenn. 1975) (quoting *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 182, 76 L. Ed. 306 (1932)). The *Anthony* court, laboring before *Denton*, was vexed that Anthony's viscerally-infirm conviction offenses did not violate the *Blockburger* elements test. *See Anthony*, 817 S.W.2d at 303 ("In this appeal, by contrast [to *Blockburger*], the result does not turn on an examination of the statutory elements of the two offenses . . . . The essential elements of kidnapping and robbery are obviously separate and distinct, and simultaneous convictions on these two charges would not necessarily violate the rule in *Blockburger*.") In a quest that would lead the *Anthony* court to rely upon due process principles to determine the validity of Anthony's multiple convictions, the court found itself "in agreement with the majority view that holds double jeopardy analysis to be inadequate in resolving the question raised by this appeal." *Id.* at 306. Crucially, as it now seems, the court justified its rather utilitarian use of due process principles as an "approach

[that] is fully consistent with the intent of the General Assembly in enacting the prohibition against kidnapping." *Id.*

*Denton*, however, later reformulated the approach to double jeopardy issues. "The key issue in multiple punishment [double jeopardy] cases is legislative intent," the supreme court said, stressing that "'the first step in the double jeopardy analysis is to determine whether the legislature . . . intended that each violation be a separate offense.'" *Id.* at 379 (quoting *Garrett v. United States*, 471 U.S. 773, 778, 105 S. Ct. 2407, 2411 (1985) (stating that when a legislature intends "that there be only one offense – that is, a defendant could be convicted under either statutory provision for a single act, but not under both – there would be no statutory authorization for a subsequent prosecution after conviction of one of the two provisions, and that would end the double jeopardy analysis")).

With legislative intent identified as the key quest in a double jeopardy analysis, *Denton* instructed that the "*Blockburger* test is useful for determining legislative intent, *but it is not conclusive.*" *Denton*, 938 S.W.2d at 379 (emphasis added). In addition to the *Blockburger* elements test, the double jeopardy analysis is guided by (1) whether "the same evidence is required to prove" each of the multiple offenses charged, *id.* at 380, (2) whether "[d]iscrete acts [or victims] can justify multiple convictions," *id.* at 381 (citing *State v. Phillips*, 924 S.W.2d 662 (Tenn. 1996)), and (3) a "comparison of the purposes of the respective statutes," *id.* at 381. The component of focusing upon whether the multiple prosecutions emanate from discrete acts is the part of the double jeopardy formula that looks beyond the terms of the proscriptive statute and takes into account the facts of the particular case. Thus, in *State v. Phillips*, a sexual offense case, our supreme court offered a litany of factors to guide the double jeopardy determination when multiple acts or offenses were at play:

1. The nature of the act;

2. The area of the victim's body invaded by the sexually assaultive behavior;

3. The time elapsed between the discrete conduct;

4. The accused's intent, in the sense that the lapse of time may indicate a newly formed intent to again seek sexual gratification or inflict abuse;  and

5. The cumulative punishment.

*Phillips*, 924 S.W.2d at 665. The court added "that the presence [or] absence of any one factor or a combination of them other than the nature of the act is not determinative of the issue." *Id.* Presumably, substituting a double jeopardy analysis for a general due process analysis in cases such as the present case would replace the *Anthony-Dixon* test with an apt variation of the *Phillips* test, and the latter would only be a component of the larger constitutional analysis.

As we have seen, legislative intent was an espoused concern of the *Anthony* court, and now, in the *Denton* era, double jeopardy analysis not only embraces, but *aims to effectuate* legislative intent through an expansive analysis that includes consideration the nature of the particular offenses. Thus, one wonders whether the *Denton* double jeopardy regime is now fully competent to fill the analytical void perceived by the *Anthony* court – thus relegating *Anthony* to desuetude, if not ripening it for outright overruling.

_____
JAMES CURWOOD WITT, JR., JUDGE