# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Remanded by the Supreme Court January 17, 2014

## STATE OF TENNESSEE v. LARRY JERELLER ALSTON, KRIS THEOTIS YOUNG, AND JOSHUA EDWARD WEBB

### Appeal from the Criminal Court for Knox County
### Nos. 94647 A, B, & C    Mary Beth Liebowitz, Judge

---

### No. E2012-00431-CCA-R3-CD - Filed February 13, 2014

---

In this State appeal, the State challenged the Knox County Criminal Court's setting aside the jury verdicts of guilty of especially aggravated kidnapping, aggravated burglary, and possession of a firearm with intent to go armed during the commission of a dangerous felony and ordering dismissal of the charges. This court reversed the judgment of the trial court setting aside the verdicts and dismissing the charges of especially aggravated kidnapping and aggravated burglary, reinstated the verdicts, and remanded the case to the trial court for sentencing. We also determined that although the trial court erred by dismissing the firearms charge on the grounds named in its order, error in the indictment for that offense nevertheless required a dismissal of those charges. Finally, we affirmed the defendants' convictions of aggravated robbery. Upon the defendant's application for permission to appeal, the Tennessee Supreme Court remanded the case to this court for consideration in light of *State v. Cecil*, 409 S.W.3d 599 (Tenn. 2013). Having reconsidered the case in light of the ruling in *Cecil*, we confirm our earlier holdings. The jury verdicts of especially aggravated kidnapping and aggravated burglary are reinstated, and those convictions are remanded to the trial court for sentencing. The trial court's dismissal of the firearms charge is affirmed on grounds other than those relied on by the trial court, and the convictions of aggravated robbery are affirmed.

### Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed in Part; Reversed and Remanded in Part

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Robert E. Cooper, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Kevin Allen, Assistant District

Attorney General, for the appellant, State of Tennessee.

Mike Whalen, Knoxville, Tennessee, for the appellee, Joshua E. Webb.

Sherif Guindi, Knoxville, Tennessee, for the appellee, Larry J. Alston.

Robert R. Kurtz (on appeal) and Vanessa Lemons (at trial), for the appellee, Kris T. Young.

**OPINION**

On the afternoon of April 15, 2010, three armed men confronted the victim, Carolyn Sue Maples, in front of her Knoxville residence and demanded her purse before ordering Ms. Maples inside her house. A neighbor who witnessed the incident telephoned police, and the three defendants were apprehended a short time later just outside Ms. Maples' residence. The jury convicted the defendants as charged of especially aggravated kidnapping, aggravated burglary, aggravated robbery, and possession of a firearm with the intent to go armed during the commission of a dangerous felony. Following the jury verdicts, the trial court entered a written order setting aside the jury verdicts and dismissing the charges of especially aggravated kidnapping and aggravated burglary on grounds that they violated principles of due process as announced in *State v. Anthony*, 817 S.W.2d 299 (Tenn. 1991), and its progeny. The trial court later set aside the jury verdicts for possession of a firearm with the intent to go armed during the commission of a dangerous felony and dismissed those charges on grounds that they could not stand in light of the dismissal of the especially aggravated kidnapping and aggravated burglary charges, which charges had acted as the predicate dangerous felonies for the firearms offenses.

The State appealed, and we reversed the trial court's setting aside the jury verdicts of especially aggravated kidnapping and aggravated burglary. In our ruling, we noted the change in law ushered in by *State v. White*, 362 S.W.3d 559 (Tenn. 2012), and concluded that the ruling in *White* applied, that the trial court erred by failing to provide the jury instruction promulgated by *White*, but that the error was harmless beyond a reasonable doubt. Upon application for discretionary appeal, our supreme court remanded this case for reconsideration in light of *State v. Cecil*, 409 S.W.3d 599 (Tenn. 2013). That case expanded the court's ruling in *White*, which itself established a new methodology for addressing due process concerns when a kidnapping offense is charged along with another felony that necessarily includes a period of confinement or movement of the victim. Under that new methodology, the jury rather than the court must determine whether that period of confinement exceeds that which is necessary to accomplish the accompanying felony. *See State v. White*, 362 S.W.3d 559, 577-78 (Tenn. 2012).

In *Anthony*, our supreme court, utilizing principles of due process, determined that a period of confinement technically meeting the definition of kidnapping frequently accompanies such crimes as robbery and rape and concluded that a separate kidnapping conviction cannot be supported when "the confinement, movement, or detention [was] essentially incidental to the accompanying felony." *State v. Anthony*, 817 S.W.2d 299, 305 (Tenn. 1991). The decision required reviewing courts to determine "whether the confinement, movement, or detention is essentially incidental to the accompanying felony and is not, therefore, sufficient to support a separate conviction for kidnapping, or whether it is significant enough, in and of itself, to warrant independent prosecution and is, therefore, sufficient to support such a conviction." *Id.* at 306. The court revisited the *Anthony* ruling several times in the ensuing two decades before finally overruling the case and all its progeny in *White*. *See State v. Bennie Osby*, No. W2012-00408-CCA-R3-CD, slip op. at 7-10 (Tenn. Crim. App. 2012) (detailing history of *Anthony*).

In *White*, the supreme court held "that whether the evidence, beyond a reasonable doubt, establishes each and every element of kidnapping, as defined by statute, is a question for the jury properly instructed under the law." *White*, 362 S.W.3d at 577. In so holding, the court concluded that "[t]he separate due process test articulated first in *Anthony*, and subsequently refined in *Dixon* and its progeny, is, therefore, no longer necessary to the appellate review of a kidnapping conviction accompanied by a separate felony." *Id.* at 578. Instead, the court held, the jury's finding beyond a reasonable doubt all the elements of kidnapping coupled with the reviewing court's "task . . . of assessing the sufficiency of the convicting evidence" is sufficient to protect the defendant's due process rights. *Id.*

Although it overruled the line of cases that required a legal, as opposed to a factual, due process evaluation, the court retained the requirement that the State establish that the removal or confinement of the victim went beyond that necessary to accomplish the accompanying offense, classifying it as a question of fact to be determined by a jury "properly instructed under the law." *Id.* at 577. The court determined that the requirement that the removal or confinement be more than essentially incidental to the other offense informs the "definition for the element of the offense requiring that the removal or confinement constitute a substantial interference with the victim's liberty." *Id.* Having thus concluded, the court ruled that, to protect the defendant's due process rights, the jury should be instructed that it must determine that the removal or confinement of the victim was "significant enough, standing alone" to support a conviction of kidnapping before imposing one when an overlapping felony accompanies the kidnapping charge. *Id.* To this end, the supreme court developed a jury instruction to facilitate the jury's determination of whether the removal or confinement was essentially incidental to the accompanying offense. *See id.* at 580-81. The court found that the *White* jury had not been instructed on the "key" element

of false imprisonment, that "substantial interference with the victim's liberty" required "a finding . . . that the victim's removal or confinement was not essentially incidental to the accompanying felony offense," *id.* at 580, and granted White a new trial on the basis of the "instructional error." *Id.*

In *Cecil*, the supreme court deemed the holding in *White* applicable to those cases that were in some stage of the appellate process when *White* was filed on March 9, 2012. *See State v. Cecil*, 409 S.W.3d 599, 608 (Tenn. 2013). The court also held that, when the due process issue identified by *White* is present, an appellate court's review of the sufficiency of the evidence in the absence of the jury instruction promulgated in *White* was insufficient to protect the defendant's right to due process. *See id.* at 609 ("Only when the jury is properly instructed can appellate review of the sufficiency of the convicting evidence satisfy the due process safeguard.") The court iterated that

> "[b]ecause the due process issue at stake is now deemed a factual issue to be determined by the trier of fact and not a legal issue to be determined by the trial court, *an appellate court that embarks upon determining the 'sufficiency of the evidence' on this issue despite the absence of the necessary, enabling instruction usurps the role of the trier of fact*."

*Id.* n.9 (quoting *Bennie Osby*, slip op. at 12 n.3) (emphasis in *Cecil*). The court confirmed that the absence of the *White* instruction results in instructional error that must be subjected to constitutional harmless error review. *See id.* at 610. By way of example, the court cited two cases in which this court had properly deemed the omission of the *White* instruction harmless beyond a reasonable doubt. *See id.* at 611 (citing *State v. Curtis Keller*, No. W2012-00825-CCA-R3-CD (Tenn. Crim. App., Jackson, June 27, 2013); *State v. Jonathan Kyle Hulse*, No. E2011-01292-CCA-R3-CD (Tenn. Crim. App., Knoxville, Mar. 19, 2013)). The common factor in these two cases was that the felony that accompanied the kidnapping charge and that gave rise to the due process concern was complete before the removal or confinement that served as the basis for the kidnapping charge.

In *State v. Curtis Keller*, Keller "and at least two accomplices kicked in the door of a house and terrorized its occupants because the defendant—an admitted drug dealer—believed that one of them owed him some money as a result of a prior transaction." *State v. Curtis Keller*, No. W2012-00825-CCA-R3-CD, slip op. at 2 (Tenn. Crim. App., Jackson, June 27, 2013). The defendant was charged with attempted especially aggravated robbery, especially aggravated burglary, employing a firearm during the commission of a dangerous felony, two counts of especially aggravated kidnapping, three counts of aggravated assault, and one count of being a felon in possession of a handgun. This court

-4-

determined that the trial court's failure to provide the *White* instruction was error but that the error was harmless beyond a reasonable doubt. We observed, "The evidence presented by the State fully established that the victims' kidnappings were separate from—not 'incidental' to—the commission of the aggravated assaults upon them." *Id.* at 5. "[A]fter the victims had been subjected to threats of deadly force, they were further removed and confined with the intention that they be used as hostages in support of the defendant's efforts to rob" a third party. *Id.* We concluded that "the movement and confinement of the victims was not done for purposes of accomplishing assaults upon them. It was done to further the defendant's attempt to rob a third party, by applying the ultimate pressure on him to surrender his money." *Id.* at 6. Noting that "[n]o reasonable jury that examined the evidence in this case would have concluded otherwise," we deemed the instructional error harmless beyond a reasonable doubt. *Id.*

In *State v. Jonathan Kyle Hulse*, the victim drove Hulse, the friend of a friend, home and helped him carry in his groceries before he "he pulled her into the house by her hair, beat her, and raped her." *State v. Jonathan Kyle Hulse*, No. E2011-01292-CCA-R3-CD, slip op. at 4 (Tenn. Crim. App., Knoxville, Mar. 19, 2013). A witnesses testified that she went outside to investigate a noise and observed the naked victim trying to get under her trailer and a naked Hulse standing some 15 feet away. *Id.* at 2. The victim reported that the defendant dragged her inside his residence and, once inside, threatened her with a knife, raped her, attacked her with a box cutter, beat her savagely, and cut her hair before she was able to escape towards a neighboring trailer. The defendant gave chase, and at one point, he grabbed the victim by the ankles and dragged her down, striking her head on the concrete. *Id.* at 10. Hulse was convicted of aggravated rape and especially aggravated kidnapping. We concluded that the trial court erred by failing to provide the *White* instruction but judged the error harmless beyond a reasonable doubt because the evidence established that

> the [d]efendant's chasing the victim was not in order to accomplish the rape, which had already occurred, nor was it inherent in the then-completed aggravated rape. His chasing her kept her from retrieving her car keys, which he had taken from her and thrown inside his trailer. The facts also support a conclusion that the [d]efendant's actions created significant danger or risk of harm. He chased the victim with the boxcutter, having already demonstrated his intent and willingness to cut her and having threatened her life. As the victim reached Ms. Upright's trailer, the [d]efendant grabbed her ankles, causing her to sustain significant injuries to her head, and pulled her down the sidewalk, preventing her from summoning help. A jury could find that Ms. Upright's investigation of the noise she

heard outside was a fortuitous intervening circumstance that frightened the [d]efendant into abandoning his further removal or confinement of the victim after the rape. The only reasonable conclusion to be drawn from the evidence is that the [d]efendant's actions were well beyond that necessary to consummate the rape.

*Id.* at 17.

With these cases in mind, we reconsider the facts of this case in light of the ruling in *Cecil*. In this case, Ashley Dawn Hill testified that on April 15, 2010, she saw two black men with dread locks and a white man with glasses walking down the middle of the street toward the victim's residence. Shortly thereafter, she saw the men approach the victim and say, "'Excuse me.'" Ms. Hill looked down momentarily and then heard the victim scream. Ms. Hill testified that when she looked up, she saw one of the black men grab the victim's purse. The victim got out of her car and ran toward her house, "and they followed her into the house." At that point, Ms. Hill telephoned 9-1-1.

Carolyn Sue Maples testified that on April 15, 2010, she went outside to get into her car to go pick up her daughter and grandchild so that they could visit her husband in the hospital. Ms. Maples recalled that when she exited her house, she saw three men, two black and one white, walking toward her. She said that she walked to the car, opened the door, and, just as she began to get in, the "big" black man asked if she knew a particular girl. Ms. Maples responded that she did not and turned to get in the car. She said, "The next thing I know there were guns to my head."

Ms. Maples testified that the two black men pointed guns at her and that one of the men demanded first that she give him her purse and then that she "'get to the house.'" She said that "the big one" took her purse as she got out of the car. The men then "pushed [her] to go open the door to the house." Once inside the house, the men pushed her onto the couch and began ransacking her home. She recalled, "They wanted my money; they wanted my jewelry; they wanted anything I had." She said that the men took $140 from her wallet along with her bank card. "The big one" demanded that she provide her "bank number" so that they could access her account. Ms. Maples recalled that the white perpetrator had "a sawed-off shotgun . . . stuffed down in his pants," and the two black men had pistols.

As Ms. Maples remained confined to the couch, "[t]he big one" took two flat screen televisions and walked toward the door. At that point, the man said, "'Oh, f***, there's the law'" and then "took off towards the one in the kitchen." When the man ran away, Ms. Maples was able to escape through the open front door. The three defendants

were apprehended as they attempted to flee from Ms. Maples' home.

At the conclusion of the State's proof, the defendants moved the trial court to dismiss the charges of especially aggravated kidnapping on grounds that the evidence did not establish that the removal and confinement of the victim was more than that necessary to accomplish the aggravated robbery of the victim. The trial court determined that the motion was premature and concluded that the issue whether a separate kidnapping conviction "could stand under the due process evaluation was an issue to be taken up not by the jury but by the court but only after the jury's verdict." The court took the motion under advisement. Post trial, the defendants argued that the aggravated robbery of the victim was a continuing offense that began when they first demanded her purse at gunpoint and continued until they were apprehended by police. The State, *citing the language of the indictment*, argued that the aggravated robbery of the victim was complete upon the taking of her purse. Persuaded by the defendant's theory that the aggravated robbery was a continuing offense and that the removal of the victim to her house and her confinement therein was incidental to that offense, the trial court set aside the jury verdicts and entered an order dismissing the charges of especially aggravated kidnapping, concluding, "The movement into the house was an essential part of the continuing aggravated robbery of the victim, thus it is an uncompleted event until broken by the arrival and announcement of police." The court ruled that due process principles, as described in *Anthony* and its progeny, mandated setting aside the especially aggravated kidnapping verdicts and entering orders of dismissal.

As we observed in our earlier opinion, *Anthony* and all its progeny were overruled by *White* and concluded that, because this case was in the appellate process at the time *White* was decided, *White* was applicable. Having so concluded, we determined that the trial court's failure to provide the *White* instruction in this case was error but that the error was harmless beyond a reasonable doubt because the evidence established that the aggravated robbery of the victim was complete before she was ordered inside her house and held there at gunpoint. Nothing in *Cecil* alters this holding.

The evidence clearly established that the three defendants accosted the victim in front of her home and demanded her purse at gunpoint and that one of the defendants immediately took the victim's purse. The aggravated robbery indictment alleged that the defendants "did unlawfully, knowingly, by putting Carolyn S. Maples in fear, take from the person of Carolyn S. Maples, *a purse and its contents*, said taking accomplished with a deadly weapon." (emphasis added). Thus, as soon as the defendants obtained possession of the victim's purse and, by extension, its contents at gunpoint, the aggravated robbery *as charged in the indictment* was complete. The defendants were not charged with robbery – aggravated, attempted, or otherwise – for the subsequent taking of items inside the victim's house. The defendants' argument that the true object of the robbery was drugs and other

items inside the house cannot alter the charged offense in this case. As soon as the defendants exercised control over the victim's purse by threatening her at gunpoint, the defendants were guilty of the aggravated robbery charged in the indictment. That offense did not continue. Only after they completed the aggravated robbery as charged in the indictment did the defendants order the victim into her home and hold her there at gunpoint. As was the case in *Keller* and *Hulse*, the evidence clearly and overwhelmingly established that the removal of the victim from her driveway and her confinement within the house went far beyond that necessary to accomplish the single aggravated robbery as that offense was narrowly charged in the indictment. No reasonable and properly instructed jury could have concluded otherwise.

Having reconsidered the facts of this case in light of *Terrance Antonio Cecil*, we again conclude that the trial court erred by setting aside the jury verdicts of especially aggravated kidnapping and dismissing those charges. Thus, the judgment of the trial court is reversed, the jury verdicts are reinstated, and the case is remanded for sentencing. We also reiterate our previous holdings regarding the jury verdicts of aggravated burglary and possession of a firearm with the intent to go armed during the commission of a dangerous felony and the convictions of aggravated robbery.

_____
JAMES CURWOOD WITT, JR., JUDGE