IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
February 5, 2015 Session

**STATE OF TENNESSEE v. JEROME MAURICE TEATS**

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Davidson County**
**No. 2009D2955     Steve R. Dozier, Judge**
_____

**No. M2012-01232-SC-R11-CD – Filed July 14, 2015**
_____

GARY R. WADE, J., dissenting.

A majority of this Court has determined that when a defendant is charged with the offenses of kidnapping and robbery as to different victims during a single criminal episode, the jury is not entitled to an instruction, pursuant to State v. White, 362 S.W.3d 559 (Tenn. 2012), that in order to convict on the kidnapping charge it must first determine whether the removal or confinement of the kidnapping victim is "essentially incidental" to the contemporaneous robbery of another victim. Because I cannot agree with my colleagues that the White instruction is never applicable to these circumstances, I respectfully dissent.

The history of this area of the law is critical to understanding the impact that our 2012 decision in White had upon well-established principles of due process. Based upon concerns that our kidnapping statutes might be construed as unconstitutionally broad, this Court, in State v. Anthony, 817 S.W.2d 299 (Tenn. 1991), adopted a due process analysis pursuant to article I, section 8 of the Tennessee Constitution that inquired as to whether "the confinement, movement, or detention" supporting a kidnapping offense was "essentially incidental" to an accompanying crime, "or whether it [was] significant enough . . . to warrant independent prosecution and . . . [,] therefore, sufficient to support [a kidnapping] conviction." Id. at 306.

Six years after the Anthony decision, the Court adopted a two-part test that addressed (1) whether the removal or confinement of a kidnapping victim was beyond that necessary to consummate an accompanying offense, and (2) whether the removal or confinement prevented the victim from summoning help, lessened the defendant's risk of detection, or created a significant danger or increased the victim's risk of harm. State v. Dixon, 957 S.W.2d 532, 535 (Tenn. 1997). In State v. Richardson, 251 S.W.3d 438, 443 (Tenn. 2008), the Court explicitly recognized the Dixon two-part test as a replacement for

the Anthony "essentially incidental" analysis. Despite changing the analysis, however, the Court continued to "adhere to the due process principles adopted in Anthony." Id. Indeed, under both Anthony and Dixon, our appellate courts were required to conduct a separate due process analysis for kidnapping convictions accompanied by another offense. See Dixon, 957 S.W.2d at 535-36; Anthony, 817 S.W.2d at 306-07.

In White, we eliminated the need for a separate due process analysis on appellate review, holding that because a fundamental component of due process is that no person can be convicted without sufficient proof of every element of a charged offense, the question of whether the elements of kidnapping have been met is one for the jury in the first instance. 362 S.W.3d at 577. To guide this determination, we articulated a jury instruction intended "to provide clear guidance . . . with regard to the statutory language," which we deemed "necessary in order to assure that juries properly afford constitutional due process protections to those on trial for kidnapping and an accompanying [offense]." Id. at 578. In consequence, the White instruction provides guidance on the "substantial interference" element of the kidnapping statute by instructing the jury to consider the following factors:

- the nature and duration of the victim's removal or confinement by the defendant;
- whether the removal or confinement occurred during the commission of the separate offense;
- whether the interference with the victim's liberty was inherent in the nature of the separate offense;
- whether the removal or confinement prevented the victim from summoning assistance, although the defendant need not have succeeded in preventing the victim from doing so;
- whether the removal or confinement reduced the defendant's risk of detection, although the defendant need not have succeeded in this objective; and
- whether the removal or confinement created a significant danger or increased the victim's risk of harm independent of that posed by the separate offense.

Id. at 580-81.

Our decision to put the due process analysis into the hands of the jury, with appellate review of the sufficiency of the evidence serving as "the ultimate component of this constitutional safeguard," id. at 578, was based, in part, on our understanding that "'[w]hether the movement or confinement of the victim is merely incidental to and

necessary for another crime will depend on the particular facts and circumstances of each case,'" id. at 577 (alteration in original) (quoting State v. Salamon, 949 A.2d 1092, 1120 (Conn. 2008)).  Guided by the principles expressed in other jurisdictions, we concluded in White that "whether the evidence, beyond a reasonable doubt, establishes each and every element of kidnapping, as defined by statute, is a question for the jury properly instructed under the law."  Id.  This is because "[t]he jury, whose primary obligation is to ensure that a criminal defendant has been afforded due process, must evaluate the proof offered at trial and determine whether the State has met its burden."  Id.  Although we overruled the Anthony/Dixon line of cases insofar as they required a separate due process analysis on appellate review, we specifically stated that "[o]ur decision [in White] should not be construed as creating a new standard for kidnapping.  Instead, we are merely providing definition for the element of the offense requiring that the removal or confinement constitute a substantial interference with the victim's liberty."  Id. at 578.

In this context, the White instruction was created for the same purpose as the separate due process tests first articulated in Anthony and subsequently refined in Dixon—that is, to effectuate the "legislative intent to punish as kidnapping only those instances in which the removal or confinement [of a victim] has criminal significance above and beyond that necessary to consummate some underlying offense, such as robbery or rape."  Id. at 576-77.  As Presiding Judge Joseph M. Tipton stated in his dissent to the Court of Criminal Appeals' majority opinion in this case, "I do not believe the legislature intended robbers to be prosecuted as kidnappers."  State v. Teats, No. M2012-01232-CCA-R3-CD, 2014 WL 98650, at *31 (Tenn. Crim. App. Jan. 10, 2014) (Tipton, P.J., dissenting).  In consequence, our decision in White changed the due process analysis from a separate test to be conducted on appellate review, as in Anthony and Dixon, to one that is entrusted to a properly instructed jury with the appellate courts then reviewing the sufficiency of the evidence; however, "[White] did not alter the rationale in Anthony regarding the circumstances in which the due process protection arises."  Id.; see also White, 362 S.W.3d at 578 (expressly overruling Anthony and its progeny insofar as they required our appellate courts to conduct a separate due process analysis that was no longer necessary in light of the White jury instruction accompanied by appellate review of the sufficiency of the evidence).  In this regard, it is notable that many of the factors articulated in the White jury instruction are identical to the Anthony/Dixon considerations that were part of the due process analysis conducted on appellate review.

In my assessment, the majority has misconstrued the historical context of these well-established principles of due process and, regrettably, has adopted the view of one panel of the Court of Criminal Appeals that our decision in White "wisely . . . overruled" every part of the Anthony decision, including its "expansive application of due process." See Teats, 2014 WL 98650, at *21 (majority opinion).  This reading of White, which improperly limits the due process rights of criminal defendants, has led to two faulty

- 3 -

conclusions: (1) that the Court in White did not intend for the new jury instruction to apply to the circumstances presented by the case before us now; and (2) that the removal or confinement of one victim can never be "essentially incidental" to the contemporaneous robbery of another victim.

Initially, I agree with the observation by the majority of the panel of the Court of Criminal Appeals in this case that the White instruction was "drafted with the assumption that the defendant is being tried for dual offenses against a single victim. Certainly, that was the factual scenario before the [supreme] court in th[at] case." Teats, 2014 WL 98650, at *19 (emphasis added). I do not, however, agree with the next paragraph of the Court of Criminal Appeals' majority: "Logic dictates that, if the [Tennessee Supreme C]ourt intended the [White] instruction to be required in cases involving circumstances similar to the instant case, the [C]ourt would have phrased the instruction as 'the victim of the underlying felony.' The [C]ourt obviously chose not to do so." Id. at *20. To the contrary, I believe the more logical conclusion is that White addressed only the facts in that case—a single victim as to both a robbery charge and a kidnapping charge—whereas the case before us involves one victim as to the robbery charge and different victims as to the kidnapping charges.[1] In my view, constitutional due process applies to either instance.

Under nearly identical circumstances, this Court has previously determined that separate kidnapping convictions are not permissible when the confinement of multiple victims is no longer than that necessary to accomplish the accompanying offense of robbery. In Anthony, the defendants robbed a Shoney's restaurant while a manager and five employees were present. 817 S.W.2d at 301. The defendants were convicted of the robbery of the restaurant manager, as well as the aggravated kidnappings of the manager and the five other employees—some of whom were detained outside the restaurant and others who were detained inside the restaurant. Id. The manager and at least two of the other employees were forcibly moved and held at gunpoint. Id. Although the defendants were charged with robbery only as to the restaurant manager, this Court held that none of the six kidnapping convictions could stand. Id. at 307-08. Later, in Dixon, this Court confirmed that reversal of the kidnapping convictions in Anthony was proper because "the movement or confinement did not exceed that normally incident to robbery." 957 S.W.2d at 535. Clearly, both the Anthony Court and the Dixon Court agreed that the removal or confinement of one victim, depending upon the facts of the case, could be "essentially incidental" to the contemporaneous robbery of a different victim.

---

[1] The conclusion of the Court of Criminal Appeals was also based upon the erroneous observation that "the issue we address today was not presented to the Anthony [C]ourt." Id. at *21. In fact, as discussed below, the circumstances of this case are strikingly similar to the circumstances at issue in Anthony.

The circumstances in this instance are no different, except for the nature of the due process analysis that should apply. The kidnapping convictions would not stand under the Anthony "essentially incidental" analysis; they would not stand under the Dixon two-part test; and now, under White, a jury has not had the opportunity to evaluate the facts with the proper instruction as to the statutory elements of the kidnapping offense. In consequence, the Defendant has not received any of the due process protections we set out in Anthony, Dixon, or, most importantly, White.

In this instance, the Defendant and his accomplice robbed a Shoney's restaurant while a manager and four other employees were present. The Defendant's accomplice gathered the four employees in one area and stood guard over them while the Defendant located the manager in the restaurant's office and demanded money. As soon as the Defendant took the money from the manager, he and his accomplice fled the scene. None of the employees were physically harmed during the robbery, which lasted between five and ten minutes. Soon after the Defendant and his accomplice left the restaurant, the manager instructed a restaurant patron to call the police, and the two robbers were quickly apprehended.

In my view, this evidence could be interpreted in at least two ways. On one hand, a rational juror might conclude that the Defendant intended only to steal money from the restaurant, and that any removal or confinement of the four employees was in furtherance of that goal, making it essentially incidental to the robbery of the manager. On the other hand, the evidence could support a finding that the removal or confinement of the four employees went beyond that necessary to accomplish the robbery, making it sufficient to sustain separate convictions for kidnapping. Because the proof could be interpreted in different ways, I would afford the Defendant his entitlement to constitutional due process, reverse each of his convictions for especially aggravated kidnapping, and remand for a properly instructed jury to determine whether there was a removal or confinement of the four employees that was not essentially incidental to the robbery of the restaurant manager. See State v. Cecil, 409 S.W.3d 599, 612-13 (Tenn. 2013) (remanding for a new trial because the question of whether the removal or confinement of a victim is essentially incidental to an accompanying offense is one for the jury to decide as a matter of fact). While the verdict of the jury could very well be the same upon retrial, due process of the law requires that the verdict be based upon complete and accurate instructions as to each element of the kidnapping statute.

_____
GARY R. WADE, JUSTICE