# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs April 10, 2012

## STATE OF TENNESSEE v. CHRISTOPHER HUBBARD

### Appeal from the Shelby County Criminal Court
### No. 1004027      James C. Beasley, Jr., Judge

### No. W2011-01078-CCA-R3-CD  - Filed June 15, 2012

Christopher Hubbard ("the Defendant") was convicted by a jury of aggravated assault and aggravated kidnapping. He appeals, arguing that the evidence was insufficient to support his conviction for aggravated kidnapping. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Tony N. Brayton (on appeal) and James Hale (at trial), Assistant Public Defenders, Memphis, Tennessee, for the appellant, Christopher Hubbard.

Robert E. Cooper, Jr., Attorney General & Reporter; Sophia S. Lee, Senior Counsel; Amy P. Weirich, District Attorney General; Pam Fleming and Kavitt Ostner, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### Background Facts & Procedure

The Defendant was indicted on June 17, 2010, by the Shelby County Grand Jury on charges of especially aggravated kidnapping and aggravated assault.[1] Following a trial on

---

[1] In addition to the especially aggravated kidnapping charge (Count 1), the indictment charged two counts of aggravated assault under alternative theories. Specifically, the indictment charged the Defendant

(continued...)

November 15, 2010, the jury convicted the Defendant of the lesser included offense of aggravated kidnapping and of aggravated assault as charged. In the second part of a bifurcated trial, the jury also found that the Defendant had a prior conviction for second degree murder. Thus, the trial court sentenced the Defendant as a repeat violent offender to life without the possibility of parole on the aggravated kidnapping conviction. The trial court also sentenced the Defendant on the aggravated assault conviction to ten years and ordered the sentences to run concurrently. The Defendant appeals, arguing that the evidence was insufficient to support his conviction for aggravated kidnapping.[2]

The evidence at trial showed that on Monday, June 8, 2009, the Defendant entered the home of Tarina Moore ("the victim"), savagely attacked her, and left her locked inside her home. The victim testified that the Defendant was her ex-boyfriend whom she had dated for approximately four years. On the Saturday night before the incident, the Defendant and the victim attended a house party and returned to the victim's home together. On Sunday, the victim went to lunch with her children; however, the Defendant was not invited because the victim's children did not get along with him. The Defendant called the victim later that day and invited her to a barbeque, but she declined the invitation. The Defendant did not spend Sunday night at the victim's home.

On Monday morning, June 8, 2009, the victim awoke to the Defendant inside her home. The victim testified that the house had been locked, but she acknowledged that she had previously given the Defendant a key. The Defendant told the victim that they needed to talk. The victim said that she laid in bed for another thirty minutes before getting up to speak with the Defendant. In the meantime, the Defendant paced downstairs and appeared to the victim to be upset. They began to argue, and the victim left her house to go to a neighbor's house. The victim could tell that the Defendant was angry, and she wanted to remove herself from the situation before it escalated. The Defendant had the victim's cell phone in his hand, and the victim planned to use the neighbor's phone to call for help. However, the neighbor was the Defendant's niece, and she was using her phone and would not let the victim use it.

The Defendant followed the victim into his niece's home. He pushed the victim onto a bed in a room in the back of the house. The Defendant wrapped his arm around the

[1](...continued)
with knowingly committing an assault that causes serious bodily injury to another (Count 2) and by use of a deadly weapon (Count 3). See Tenn. Code Ann. § 39-13-102(a)(1)(A)-(B). The trial court nolled the latter count prior to trial.

[2] The Defendant concedes that the evidence was sufficient to support his conviction for aggravated assault.

victim's neck and his legs around her body. He began hitting the side of her body. The Defendant was "hollering and screaming" and telling the victim to "shut up" and that nobody was going to help her. The Defendant struck the victim about her body and choked her. He then grabbed the victim by her hair and led her out of his niece's house.

The victim broke away and attempted to run back to her own house. She planned to beat the Defendant in a footrace to the door and lock him outside. As she reached her front door, the Defendant caught up to her and pushed his way into her house. He pushed her into a back room. The Defendant had left clothes at the victim's house, and he instructed her to put the clothes into a duffle bag. When she did not do so quickly enough, he punched her so hard that she fell down. The victim could hear the Defendant talking to someone on the phone and telling that person to come get him. As he was doing so, the victim again tried to escape, but the Defendant snatched her and threw her on the floor. He told her that he was going to kill her.

The victim again broke free. She ran out her back door and to another neighbor's house. She asked the neighbor to call the police, but the neighbor refused, saying that he did not "want this trouble in [his] house." The Defendant grabbed the victim, took her out of the neighbor's house, and pushed her back toward her house. He pushed her on the ground, punching and kicking her all the while. At one point, the Defendant grabbed the victim's head and slammed it against a wall. The Defendant threw the victim back into her house, where he continued to assault her. The victim said that after a final blow, she could not see anything and fell to the floor. The Defendant grabbed his duffle bag and got into a green Jeep, which someone had driven to pick him up. The victim estimated that the attack lasted between two and three hours.[3]

The victim testified that after the Defendant left, she was locked inside her home and could not get out. She explained that she had double deadbolts on her doors, which required a key to open from either the inside or the outside. The Defendant had taken the victim's key and had also taken her cell phone, leaving her without a way to call for help. Upon cross-examination, the victim testified that the windows to her house locked from the inside. On redirect examination, the prosecutor asked the victim whether she would have been able to get out of the windows, and the victim replied that she could not have "[b]ecause the landlord had these types of locks that you can't – I can't get to them fast enough if I tried to get out of the house." The victim was then asked whether she could have gotten out of the windows once the Defendant left, and the victim replied that she had not considered doing so.

---

[3] In providing specific times, the victim stated that the Defendant woke her up around 8:00 or 8:30 a.m. and left at 10:00 a.m.

The victim's daughter, Keayasha Lee, testified that she had been unsuccessfully trying to call her mother's cell phone starting at around 11:30 a.m. She called approximately ten times and eventually went to the victim's house. Lee used her key to open the door. When she did so, she discovered her mother limping, with a black eye and a swollen face.

The victim was taken by ambulance to a hospital where she spent three or four days in the intensive care unit. Dr. James Langston, a neuroradiologist with the University of Tennessee Medical School, participated in the victim's medical diagnosis and testified at trial. According to Dr. Langston, the victim suffered a bruise to the scalp and a bruise to the face. CT scans revealed that the victim suffered bruising on the brain and blood collected between the skull and brain. Dr. Langston opined that the internal injuries were caused by the victim's brain hitting the inside of her skull. Photographs were introduced showing the extent of the victim's injuries including a split lip, an eye swollen shut, bruises on the face, arms and shoulders, scratches, bite marks, and hair missing from her scalp.

At the close of the State's proof, the Defendant moved for a judgment of acquittal on both counts. The trial court denied the motion. The Defendant elected not to testify and did not offer any proof. Following deliberations, the jury convicted him of aggravated kidnapping and aggravated assault.

Analysis

The Defendant challenges the sufficiency of the evidence supporting his conviction for aggravated kidnapping.[4] Our standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e). After a jury finds a defendant guilty, the presumption of innocence is replaced with a presumption of guilt. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Consequently, the defendant has the burden on appeal of demonstrating that the evidence was insufficient to support the jury's verdict. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellate court does not weigh the evidence anew. Rather, "a jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts" in the testimony and all reasonably drawn inferences in favor of the State. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, "the

---

[4] We are cognizant of the Tennessee Supreme Court's recent decision in State v. White, 362 S.W.3d 559 (Tenn. 2012) (overruling State v. Anthony, 817 S.W.2d 299 (Tenn. 1991) and State v. Dixon, 957 S.W.2d 532 (Tenn. 1997)), holding that it is a question for the jury after appropriate instructions as to whether the removal or confinement of a victim in a kidnapping was essentially incidental to an accompanying felony, such as a rape or robbery. The Defendant has advanced no such issue in this case.

State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom." Id. This standard of review applies to guilty verdicts based upon direct or circumstantial evidence. State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (citing State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)).

The weight and credibility given to the testimony of witnesses, and the reconciliation of conflicts in that testimony, are questions of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984). It is not the role of this Court to reevaluate the evidence or substitute its own inferences for those drawn by the jury. State v. Winters, 137 S.W.3d 641, 655 (Tenn. Crim. App. 2003) (citations omitted).

The Defendant was convicted of aggravated kidnapping, a Class B felony. See Tenn. Code Ann. § 39-13-304(b)(1) (2006). As relevant to this case, our criminal code defines aggravated kidnapping as a false imprisonment committed where the victim suffers bodily injury. Id. § 39-13-304(a)(4). "A person commits the offense of false imprisonment who knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." Tenn. Code Ann. § 39-13-302(a) (2006).

The Defendant argues that there was no proof that the Defendant knowingly confined the victim so as to substantially interfere with her liberty. He points out that the victim was left in her own home, not bound or gagged, and could have escaped out of a window. Thus, he contends that "the proof supports the conclusion that it was the [D]efendant's purpose to assault, humiliate and abandon the victim, but not to confine her." We disagree.

Viewed in the light most favorable to the State, the evidence shows that the Defendant, having brutally beaten the victim over a course of hours, locked her inside her home and took her keys and cell phone. The victim testified that the doors to her house utilize double deadbolts that can be locked or unlocked from either the inside or outside but require a key to do so. The victim testified that she attempted to get out of her house but could not. Nor could she call anyone for help. The victim was rescued only upon her daughter Lee's arrival, and Lee testified that she used a key to unlock the house.

The Defendant argues that the victim could have jumped out of a window. However, the kidnapping statute does not require a victim to take such drastic action to avoid being kidnapped. The jury could infer from the Defendant's actions that by locking the victim in her house and taking her keys and cell phone he confined her and substantially interfered with her liberty. See Tenn. Code Ann. § 39-13-302(a). Furthermore, because the victim suffered bruising and blood on the brain, bruising on her face, arms and shoulders, scratches, bite marks, and hair pulled from her scalp, the jury could find that the victim suffered bodily injury. See Tenn. Code Ann. § 39-13-304(a)(4). Thus, we conclude that the evidence proved

beyond a reasonable doubt that the Defendant was guilty of aggravated kidnapping. Consequently, the Defendant is not entitled to relief on this issue.

## CONCLUSION

For the reasons stated above, we affirm the judgments of the trial court.

_____
JEFFREY S. BIVINS, JUDGE