# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Remanded by the Supreme Court August 21, 2013

## STATE OF TENNESSEE v. RICCO R. WILLIAMS

### Appeal from the Circuit Court for Lauderdale County
### No. 8856     Joseph H. Walker, III, Judge

---

### No. W2011-02365-CCA-RM-CD  - Filed January 7, 2014

---

A jury convicted Ricco R. Williams ("the Defendant") of five counts of especially aggravated kidnapping, two counts of aggravated robbery, one count of aggravated burglary, two counts of employing a firearm during the commission of a dangerous felony, and one count of unlawful possession of a firearm by a convicted felon.  The Defendant appealed and contended, among other issues, that the evidence was not sufficient to support his convictions.  Upon our review, this Court reversed the Defendant's two convictions of employing a firearm during the commission of a dangerous felony and remanded those counts for a new trial; modified one of the Defendant's aggravated robbery convictions to a conviction of the lesser-included offense of aggravated assault; reversed and dismissed the Defendant's conviction of unlawful possession of a firearm by a convicted felon; and affirmed the Defendant's convictions of and sentences for especially aggravated kidnapping, aggravated burglary, and the remaining aggravated robbery.  See State v. Ricco R. Williams, No. W2011-02365-CCA-R3-CD, 2013 WL 167285, at *1 (Tenn. Crim. App. Jan. 14, 2013) ("Williams I").  Upon the Defendant's application for permission to appeal, the Tennessee Supreme Court remanded the case to this Court for consideration in light of State v. White, 362 S.W.3d 559 (Tenn. 2012), and State v. Cecil, 409 S.W.3d 599 (Tenn. 2013).  See State v. Ricco R. Williams, No. W2011-02365-SC-R11-CD (Tenn. Aug. 21, 2013).  Upon our consideration of the Defendant's especially aggravated kidnapping convictions in light of White and Cecil, we affirm the Defendant's three convictions of especially aggravated kidnapping as to the victims A.R., K.R., and M.R.  We reverse the Defendant's two convictions of especially aggravated kidnapping as to the victims Timothy Currie and Sherita Currie and remand those charges for a new trial.  Our previous holdings regarding the Defendant's remaining convictions are unaffected by the remand and, thus, remain valid.

**Tenn. R. App. P. 3; Judgments of the Circuit Court Affirmed in Part;
Reversed and Remanded in Part; Reversed and Modified in Part;
Reversed and Dismissed in Part**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which ROGER A. PAGE, J., joined. JAMES CURWOOD WITT, JR., J., filed an opinion concurring in part and dissenting in part.

George Douglas Norton, Jr., Ripley, Tennessee, for the appellant, Ricco R. Williams.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and Joni R. Livingston and Julie K. Pillow, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**<u>Background</u>**

The Defendant in this case was convicted of multiple crimes including five especially aggravated kidnappings. The Tennessee Supreme Court has remanded this case with instructions for this Court to consider the case in light of State v. White, 362 S.W.3d 559 (Tenn. 2012), and State v. Cecil, 409 S.W.3d 599 (Tenn. 2013). White and Cecil established a new methodology for ensuring that a defendant is afforded due process when a kidnapping offense is charged along with an accompanying felony that necessarily includes a period of confinement or movement of the victim, the underlying elements in kidnapping. Under that new methodology, the *properly instructed* jury must determine whether that period of confinement or movement exceeds that which is necessary to accomplish the accompanying felony. See White, 362 S.W.3d at 577-78. If convicted of the kidnapping offense, the defendant may then seek appellate review of the sufficiency of the evidence relied on by the *properly instructed* jury. See Cecil, 409 S.W.3d at 609 ("Only when the jury is properly instructed can appellate review of the sufficiency of the convicting evidence satisfy the due process safeguard."). Accordingly, we limit our review on remand in this case to the Defendant's especially aggravated kidnapping convictions.

Initially, it will be helpful to summarize the evidence which was more fully described in Williams I, 2013 WL 167285, at *1-5. The Defendant and two compatriots broke into the home shared by Timothy and Sherita Currie and Ms. Currie's three children, M.R., K.R., and A.R.,[1] at 1:15 a.m. on a night in June 2009. Among them, the intruders were armed with a crowbar, a pistol, and an "AK-47." The intruders demanded drugs and money, and one of them struck Mr. Currie in the head with the butt of a gun. They then ordered Mr. Currie to the living room. The intruders also ordered Ms. Currie and her children to the living room,

---

[1] At the time of the offenses in the present case, M.R. was nineteen years old, K.R. was seventeen, and A.R. was thirteen. Williams I, 2013 WL 167285, at *1. To protect the anonymity of the two minor victims, we will refer to all of Ms. Currie's children by their initials.

where they were all held at gunpoint while the intruders ransacked the house and took jewelry and money. The Curries testified that they were not free to leave during the 45-minute episode.

K.R. testified that she recognized the Defendant. She managed to surreptitiously call 9-1-1, and when the police arrived and knocked on the front door, the intruders hastily fled through the rear of the house. During his flight, the Defendant apparently dropped his wallet, complete with identification, which was recovered by the pursuing police officers. See id.

The jury convicted the Defendant of the following offenses:

| Count | Conviction | Victim |
|-------|-----------|--------|
| 1 | Especially Aggravated Kidnapping | Mr. Currie |
| 2 | Especially Aggravated Kidnapping | Ms. Currie |
| 3 | Especially Aggravated Kidnapping | M.R. |
| 4 | Especially Aggravated Kidnapping | K.R. |
| 5 | Especially Aggravated Kidnapping | A.R. |
| 6 | Aggravated Burglary | |
| 7 | Employing a Firearm During the Commission of a Dangerous Felony | |
| 8 | Aggravated Robbery | Mr. Currie |
| 9 | Aggravated Robbery | Ms. Currie |
| 10 | Employing a Firearm During the Commission of a Dangerous Felony, having been previously convicted of aggravated assault and voluntary manslaughter | |
| 11 | Possession of a Firearm, having been previously convicted of a felony | |

Those counts charging especially aggravated kidnapping and aggravated robbery alleged that the offenses were accomplished with a deadly weapon. See id. at *6.

On the Defendant's direct appeal of these convictions, this Court held that the evidence sufficiently supported the convictions of especially aggravated kidnapping and

-3-

aggravated burglary. Id. at *7. We reversed the firearm offenses in counts seven and ten based upon the State's failure to elect a qualifying, underlying dangerous felony and remanded those counts for a new trial. Id. at *10. Based upon principles of double jeopardy as expressed in State v. Franklin, 130 S.W.3d 789, 795-98 (Tenn. Crim. App. 2003), we affirmed the conviction of aggravated robbery in count eight but reduced the aggravated robbery conviction in count nine to aggravated assault. Williams I, 2013 WL 167285, at *6. We reversed the firearm conviction in count eleven and dismissed that charge because "no proof showed that the defendant actually, constructively, or jointly possessed a firearm." Id. at *11. We also declined to hold that the trial jury had been tainted or that the consecutive alignment of sentences was erroneous. Id. at *12, 13.

Concerning the issue mandated for remand review, the Defendant, at this juncture, stands convicted of the especially aggravated kidnappings of Mr. Currie, Ms. Currie, M.R., K.R., and A.R. He also stands convicted of the aggravated robbery of Mr. Currie and the aggravated assault of Ms. Currie. In the latter conviction, the Defendant was charged with, and the jury returned a verdict of guilty of, aggravated robbery, but this Court modified the conviction to aggravated assault. See id. at *10. M.R., K.R., and A.R. were not named victims in any offenses other than the especially aggravated kidnappings committed against them.

## Analysis

Turning now to the issue before us, we first consider the viability of the Defendant's two convictions of especially aggravated kidnapping committed against Mr. Currie and Ms. Currie.

*Viability of Dual Convictions for Kidnapping*
*and Accompanying Felony*

In 1991, the Tennessee Supreme Court considered in a consolidated appeal two unrelated cases in which each of the two defendants committed an armed robbery of a business. See State v. Anthony, 817 S.W.2d 299, 300 (Tenn. 1991). In the first case, the defendant (Anthony) and his cohort committed an armed robbery of a Shoney's restaurant in Knoxville, Tennessee. When the two men approached the restaurant, they found three employees outside near the dumpster. Anthony, who was armed, ordered the employees to the ground and left his cohort to watch over them. Anthony entered the restaurant and encountered two more employees. At gunpoint, he ordered them to open the safe, which involved all three of them walking to the office. One of the employees told Anthony that the safe was elsewhere, resulting in Anthony's ordering her to stay in the office while he and the other employee (Kesterson) proceeded to the safe. On his way out of the restaurant, Anthony encountered yet another employee, whom Anthony ordered, at gunpoint, to return to the

-4-

restroom and stay there. Anthony was subsequently convicted by a jury of the armed robbery of Kesterson and the aggravated kidnappings of Kesterson and the other five employees. See id. at 301.

In the second case, the defendant (Martin) entered an insurance agency while armed. Martin encountered the owner and a secretary. Martin told the owner to lie on the floor and obtained cash from him. Martin also took the agency's money from the secretary as well as some cash from her wallet. Martin then took the owner by the arm and ordered both victims into the men's restroom, telling them to stay there. Martin then fled. Martin subsequently was convicted of two counts of armed robbery (one as to each victim) and two counts of aggravated kidnapping (one as to each victim). See id. at 302.

On review, our supreme court framed the issue as "the propriety of a kidnapping conviction where detention of the victim is merely incidental to the commission of another felony, such as robbery or rape." Id. at 300. The court held that none of the kidnapping convictions could be sustained after concluding that the dual convictions offended Tennessee's constitutional guarantee of due process. Id. at 306-07. For guidance in similar cases, our high court articulated the appropriate due process test, to be applied by the appellate courts on review, as follows: "whether the confinement, movement, or detention is essentially incidental to the accompanying felony and is not, therefore, sufficient to support a separate conviction for kidnapping, or whether it is significant enough, in and of itself, to warrant independent prosecution and is, therefore, sufficient to support such a conviction." Id. at 306.

Our supreme court later modified this test in State v. Dixon, 957 S.W.2d 532, 535 (Tenn. 1997). See State v. Richardson, 251 S.W.3d 438, 443 (Tenn. 2008) (explicitly recognizing that the test set forth in Dixon replaced the Anthony test). In Dixon, the court described Anthony's "essentially incidental" test as designed to "only prevent the injustice which would occur if a defendant could be convicted of kidnapping where the only restraint utilized was that necessary to complete the act of rape or robbery." 957 S.W.2d at 534-35. The Dixon court added that "any restraint in addition to that which is necessary to consummate rape or robbery may support a separate conviction for kidnapping." Id. at 535. The new due process test set forth in Dixon consisted of two prongs: (1) whether the defendant's movement or confinement of the victim was beyond that necessary to consummate the accompanying felony, and, if so; (2) whether the additional movement or confinement prevented the victim from summoning assistance, lessened the defendant's risk of detection, or created a significant danger or increased the victim's risk of harm. Id. If each prong was satisfied on appellate review, a separate kidnapping conviction could be sustained. Dixon involved a single victim, and the defendant was convicted of aggravated kidnapping, aggravated assault, and attempted sexual battery. Id. at 533. The supreme court affirmed the defendant's convictions. Id. at 532.

In 2012, the Tennessee Supreme Court overruled Anthony and its progeny, including Dixon and Richardson, in White, 362 S.W.3d at 578. In White, the defendant was convicted of burglary, aggravated robbery, and especially aggravated kidnapping arising from the defendant's robbery of a Clarksville restaurant. Significantly, the victim of the robbery and kidnapping offenses was a single individual.[2] In analyzing whether the defendant's dual convictions for aggravated robbery and especially aggravated kidnapping could stand, the White court rejected Anthony's reliance on an appellate court's due process scrutiny of kidnapping convictions imposed in conjunction with convictions of an accompanying felony. Id. at 577-78. Instead, the White court shifted the appellate analysis to a standard sufficiency of the evidence review of a *properly instructed* jury's assessment of the facts. Id. The White court emphasized that it was the *jury's* "primary obligation . . . to ensure that a criminal defendant has been afforded due process." Id. at 577. A jury does so by assessing the proof at trial and determining whether the State has met its burden of proving each and every element of the charged offenses beyond a reasonable doubt. Id. at 577-78. Thus, in White, the supreme court held "that whether the evidence, beyond a reasonable doubt, establishes each and every element of kidnapping, as defined by statute, is a question for the jury properly instructed under the law." Id. at 577. In so holding, the court concluded that "[t]he separate due process test articulated first in Anthony, and subsequently refined in Dixon and its progeny, is, therefore, no longer necessary to the appellate review of a kidnapping conviction accompanied by a separate felony." White, 362 S.W.3d at 578.

To ensure that the jury can carry out its function of protecting a defendant's due process rights when considering whether the State has proven each and every element of a kidnapping charge that arises out of the same conduct against the same victim of an accompanying felony, the White court delineated the following jury instruction:

> To establish whether the defendant's removal or confinement of *the victim* constituted a substantial interference with his or her liberty, the State must prove that the removal or confinement was to a greater degree than that necessary to commit the offense of [insert offense], which is the other offense charged in this case. In making this determination, you may consider all the relevant facts and circumstances of the case, including, but not limited to, the following factors:
>
> > • the nature and duration of *the victim's* removal or confinement by the defendant;

---

[2] Although there were two employees in the restaurant at the time the defendant committed his crimes, one of the employees "pleaded guilty to accessory after the fact to the robbery." White, 362 S.W.3d at 563. The White opinion indicates that this employee had known the defendant for some time before the crimes and provided him with some assistance at the restaurant. Id.

• whether the removal or confinement occurred during the commission of the separate offense;

• whether the interference with *the victim's* liberty was inherent in the nature of the separate offense;

• whether the removal or confinement prevented *the victim* from summoning assistance, although the defendant need not have succeeded in preventing *the victim* from doing so;

• whether the removal or confinement reduced the defendant's risk of detection, although the defendant need not have succeeded in this objective; and

• whether the removal or confinement created a significant danger or increased *the victim's* risk of harm independent of that posed by the separate offense.

Id. at 580-81 (footnote omitted) (emphases added).

In Cecil, our supreme court made clear that White applied to cases then in the appellate "pipeline." Cecil, 409 S.W.3d at 608. In this case, the jury returned its verdicts in June 2011, and the Defendant filed a timely notice of appeal in this Court. Thus, at the time White was filed on March 9, 2012, the Defendant's case was in the appellate process. Accordingly, the Defendant "is entitled to the benefit of [the White] ruling." Id.

In this case, the trial court instructed the jury about especially aggravated kidnapping as follows:

Counts 1 through 5: Especially aggravated kidnapping:

Any person who commits an especially aggravated kidnapping is guilty of a crime. For you to find the defendant guilty of this offense, the State must have proven beyond a reasonable doubt the existence of the following essential elements:

1. That the defendant knowingly confined another unlawfully so as to interfere substantially with the other's liberty, and

2. That the confinement was accomplished with a deadly weapon or by display of any article used or fashioned to lead the alleged victim to reasonably believe that it was a deadly weapon.

A removal or confinement is unlawful if it is accomplished by force, threat, or fraud, or in the case of a person under the age of 13, if it's accomplished without the consent of a parent.

The trial court also charged the jury on the lesser-included offenses of aggravated kidnapping, kidnapping, and false imprisonment, together with the applicable definitions. However, as in White, the trial court's instructions to the jury "did not define the key element – the substantial interference with the victim's liberty – as requiring a finding by the jury that the victim's removal or confinement was not essentially incidental to the accompanying felony." White, 362 S.W.3d at 580. "[T]he absence of the White instruction constitutes error." Cecil, 409 S.W.3d at 609.[3]

Cecil also instructs that this instructional deficit is a constitutional error. Id. at 610. Such a non-structural constitutional error mandates reversal unless the State demonstrates beyond a reasonable doubt that the error was harmless. Id. (citing State v. Rodriguez, 254 S.W.3d 361, 371 (Tenn. 2008)). "[T]he touchstone of this inquiry is whether a rational trier of fact could interpret the proof at trial in different ways." Id. (citing White, 362 S.W.3d at 579). If the proof could be interpreted in a manner that would not support the Defendant's kidnapping convictions, then the Defendant is entitled to a new trial on these two counts of especially aggravated kidnapping. See id. at 611-12.

As set forth more fully in our initial opinion in this case, see Williams I, 2013 WL 167285, at *1-5, the proof at trial established that the Defendant and his cohorts broke into the victims' home at about 1:15 in the morning. The intruders ordered all five of the victims into the living room. While one of the men held the victims at gunpoint for approximately forty-five minutes, the other two men ransacked the house, finding and taking money and jewelry. The men threatened to bind Ms. Currie and the children with duct tape and burn the house down with them in it. They also threatened to bind Mr. Currie and "drop" him in the Mississippi River. Just before the police arrived, the intruders lined the family members up and placed duct tape nearby. When the police arrived, the intruders fled the home.

We hold that there is a reasonable probability that, had it been properly instructed, the jury could have concluded that the actions of the Defendant and his cohorts, particularly

---

[3] We do not fault the trial court for failing to give a jury instruction that had not yet been promulgated.

considering their apparent preparations to bind and kill the victims after forty-five minutes spent ransacking the house, went beyond what was necessary to commit the underlying robbery and became, instead, detention for the purpose of killing the victims as punishment for not producing the money or drugs the assailants apparently believed were in the victims' possession. We also hold that there is a reasonable possibility that, had it been properly instructed, the jury could have concluded that the actions of the Defendant and his cohorts in holding Mr. and Ms. Currie at gunpoint while they ransacked the house were essentially incidental to their actions in committing the robbery. Because the proof could be interpreted in a manner that would not support the Defendant's convictions of the especially aggravated kidnappings of Mr. and Ms. Currie, we are constrained to conclude that the Defendant's convictions of these two especially aggravated kidnappings[4] must be reversed, and the charges remanded for a new trial. See Cecil, 409 S.W.3d at 613.

*Viability of Single Convictions of Especially Aggravated Kidnapping*

We turn now to the Defendant's three convictions of especially aggravated kidnapping as to the three victims A.R., K.R., and M.R., Ms. Currie's three children. Significantly, the Defendant was not charged with an accompanying felony naming any of these victims.

As indicated above, the core issue of Anthony, Dixon, and White was whether the defendant's actions in moving and/or detaining his victim(s) was no more than was necessary to commit the robbery of the business establishment or, in Dixon, the sexual assault of the victim. See Anthony, 817 S.W.2d at 306 (holding that one method of resolving whether the confinement, movement, or detention required for a kidnapping offense was essentially incidental to the accompanying felony was to determine whether the defendant's conduct increased the victim's risk of harm beyond that *necessarily* present in the accompanying felony); Dixon, 957 S.W.2d at 535 (recognizing that "any restraint in addition to that which is *necessary* to consummate [the accompanying felony] may support a separate conviction for kidnapping") (emphasis added); White, 362 S.W.3d at 576-77 ("In our view, the kidnapping statutes, 'construed according to the fair import of their terms,' Tenn. Code Ann. § 39-11-104, and coupled with their derivation from the Model Penal Code, evince a legislative intent to punish as kidnapping only those instances in which the removal or confinement has criminal significance above and beyond that *necessary* to consummate some underlying offense, such as robbery or rape.") (emphasis added); see also State v. Salamon,

_____

[4] We reverse the kidnapping convictions rather than the aggravated robbery and aggravated assault convictions because, in White, our supreme court ordered the case remanded to the trial court for "a new trial with the appropriate instructions as to the especially aggravated kidnapping charge." 362 S.W.3d at 581. We agree with the dissent in questioning why, in these cases, the kidnapping conviction, as opposed to the underlying felony conviction, must be the casualty of a due process reversal, so long as the evidence is sufficient to support the kidnapping conviction. See Dissent at pp. 3-4.

-9-

949 A.2d 1092, 1120 (Conn. 2008) (recognizing that "the guiding principle is whether the [confinement or movement] was so much the part of another substantive crime that the substantive crime could not have been committed without such acts") (internal quotation marks omitted) (citation omitted). The underlying concerns were that a perpetrator, by necessity, must detain his robbery victim long enough to commit the taking of property from the victim,[5] or his rape victim long enough to accomplish the rape, and that principles of due process prohibited the imposition of a separate kidnapping conviction when the detention was no more than that required to commit the primary felony.[6]

Indeed, the White instruction appears to have been drafted with the assumption that the defendant is being tried for dual offenses against a single victim. Certainly, that appears to have been the factual scenario before the court in that case. We also note that the White court relied on the Connecticut Supreme Court decision, Salamon, 949 A.2d 1092. See White, 362 S.W.3d at 579. Salamon involved offenses against a single victim. See Salamon, 949 A.2d at 1101-02. Indeed, the White court noted that the Salamon court "clarified that the jury was to be instructed that 'if it finds that the defendant's restraint of *the victim* was merely incidental to the defendant's commission of another crime against *the victim*, that is, assault, then it must find the defendant not guilty of the crime of kidnapping.'" White, 362 S.W.3d at 579 n.15 (quoting Salamon, 949 A.2d at 1122) (emphases added). Logic dictates that, if the White court intended the instruction to be required in cases involving a kidnapping charge that was not accompanied by a robbery (or rape) charge involving *the same victim,* the White court would have phrased the instruction as "the victim *of the underlying felony*." The court obviously chose not to do so.

Thus, the especially aggravated kidnapping charges involving the three victims A.R., K.R., and M.R. in this case present a significantly different situation than the situation which triggered the underlying concerns our supreme court first articulated in Anthony. In this case, the Defendant was *not* convicted of both especially aggravated kidnapping and an accompanying felony as to any of these three victims. Rather, contrary to both Anthony and White, the State sought and obtained only one conviction as to each of these three victims, each of whom the Defendant and his cohorts moved and detained while ransacking the house and taking property from the joint possession of Mr. and Ms. Currie.

While we recognize that our supreme court has determined that it is unfair to convict a defendant of two crimes against a single victim when he arguably has committed only a

___

[5] Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a) (2006).

[6] The Anthony court relied on principles of due process after concluding that a double jeopardy analysis was not adequate to resolve the issue. See Anthony, 817 S.W.2d at 306.

single crime that, *by necessity*, includes an element of a different crime, that same concern eludes us in the face of multiple victims for which a defendant is charged with a single offense. That is, we acknowledge that a perpetrator, by some means or other, must detain his robbery victim long enough to take some property from her. However, there is no corresponding *necessity* for the perpetrator to immobilize innocent bystanders. Certainly, immobilizing such persons may facilitate the perpetrator's commission of his intended crime against his intended robbery victim, but we do not agree that principles of due process prevent the perpetrator from being prosecuted for the separate crime he may commit against bystanders in order to facilitate his primary crime. Indeed, we fail to see how a crime against one person can be merely "incidental" to a crime against another person.[7]

Thus, we are persuaded that the robbery of a couple in their home in which their children are also present does not expand a perpetrator's due process protections such that he is free to move and/or detain the children in order to commit a robbery of the parents without facing kidnapping convictions, at least as to the children against whom he cannot be charged with robbery.[8]

We recognize, of course, that our conclusion, in some respects, is contrary to our supreme court's holdings in Anthony. However, the issue we address today was not presented to the Anthony court. Moreover, our current supreme court wisely has overruled Anthony, and we no longer are bound by its expansive application of due process which has been utilized to defeat kidnapping convictions of perpetrators who commit offenses against separate persons to facilitate the robbery of an entirely different victim.

As the logical correlate of our conclusion about the limits of the Defendant's due process protections, we hold that the Defendant in this case was not entitled to the White instruction as to the especially aggravated kidnapping charges naming A.R., K.R., and M.R. as victims. We read White as requiring the expanded kidnapping instruction only when the jury is required to determine whether the defendant committed dual offenses of kidnapping and an accompanying crime for which some measure of detention was necessary *against the*

---

[7] This is particularly the case when the "incidental" crime consists of the terrifying experience of being detained in a separate location at gunpoint.

[8] In State v. Franklin, this Court determined that "the proper unit of prosecution for aggravated robbery in Tennessee is the number of thefts rather than the number of victims." 130 S.W.3d 789, 798 (Tenn. Crim. App. 2003). Accordingly, the Franklin court held that, when the evidence establishes only a single taking of property even though more than one person was present, only one conviction of aggravated robbery may be sustained. Id.

*same victim.*[9]  In the instant case, the jury was not asked to make this determination as to these three victims.  Because the State did not seek dual convictions as to these victims, the trial court did not err in failing to include the White instruction[10] in its charge to the jury as to these victims.

We acknowledge that panels of this Court have reached differing conclusions on this issue.  For instance, in State v. Richard Lacardo Elliott, No. M2001-01990-CCA-R3-CD, 2002 WL 31528538, at *1 (Tenn. Crim. App. Nov. 15, 2002), perm. app. denied (Tenn. Feb. 24, 2003), a panel of this Court, even prior to White, considered the defendant's convictions of aggravated robbery and aggravated kidnapping as to separate victims arising out of the defendant's conduct in a liquor store.  Initially, the defendant began a transaction with the clerk.  When a customer walked in, the defendant produced a gun and ordered the customer to the floor at gunpoint.  The defendant returned his attention to the clerk and ordered the clerk to give him money.  After the clerk complied, the defendant ordered both persons to a storage area in the rear of the store and "warned them not to move from that location for five or ten minutes."  Id.  The defendant was convicted of the aggravated kidnapping of the customer and of the aggravated robbery of the clerk.  The panel rebuffed the defendant's Anthony challenge in what appears to be the first case that specifically addressed the precise issue before this Court in the instant case.

The Elliott court opined as follows:

> We believe that the kidnapping of [the customer] . . . had nothing to do with the robbery of [the clerk]. . . .  Defendant did not rob the victim of the aggravated kidnapping, [the customer], nor was he charged with that offense.  Rather, he was charged with the aggravated robbery of [the clerk] and the aggravated kidnapping of [the customer].  As the supreme court stated in Anthony, "[t]he real issue involves the propriety of a kidnapping conviction where detention of the victim is merely incidental to the commission of another felony, such as robbery or rape."  817 S.W.2d at 300.  In this case, the

---

[9] Rape, for instance, necessarily involves some detention of the victim by the defendant.  See State v. Michael Eugene Duff, No. 03C01-9501-CR-00008, 1996 WL 49250, at *5 (Tenn. Crim. App. Feb. 8, 1996) (recognizing that "confinement and detention are necessarily part of rape"), perm. app. denied (Tenn. July 8, 1996).

[10] As suggested by the White court,  the Tennessee Judicial Conference Committee on Pattern Criminal Jury Instructions adopted a permanent pattern instruction based on White.  See T.P.I. - Crim. 8.03 (17th ed. 2013).  The pattern jury instruction is basically identical to the instruction set forth in White.

question is whether the detention of [the customer] was merely incidental to the aggravated robbery of [the clerk].

. . . .

Here, rather than leaving the store, Defendant ordered [the customer] at gunpoint to a storage area in the back of the store after the aggravated robbery of [the clerk] was complete. Therefore, the aggravated kidnapping of [the customer] was not incidental to the aggravated robbery of [the clerk]. We believe, however, that when the robbery victim and the kidnapping victim are two different persons, the issue is better characterized as a question of whether sufficient evidence exists to sustain a conviction for aggravated kidnapping.

Id. at *3-4. The panel concluded that the evidence was sufficient to support the defendant's conviction of the aggravated kidnapping of the customer. Id. at *4. See also State v. Gregory Mathis, No. M2011-01096-CCA-R3-CD, 2013 WL 4774130, at *9 (Tenn. Crim. App. Sept. 5, 2013) (rejecting due process challenge to especially aggravated kidnapping conviction because victim was not a victim of the accompanying aggravated robbery of boyfriend, holding that "the especially aggravated kidnapping conviction . . . was a separate and distinct offense from the aggravated robbery").

In contrast, a majority of a different panel in State v. Josh L. Bowman disagreed with the Elliott case. No. E2012-00923-CCA-R3-CD, 2013 WL 4680402, at *14-15 (Tenn. Crim. App. Aug. 29, 2013). In Bowman, the panel considered a home invasion case in which the defendant and his cohort accosted a couple in their home and shot and killed the husband. The men then made off with the couple's safe. During the episode, one of the men held a gun to the wife's head and ordered her to sit down. The defendant was convicted of the especially aggravated kidnapping of the wife and the especially aggravated robbery of the husband, as well as other convictions not relevant to the issue before us. The defendant argued that he was entitled to a new trial because the jury was not given the White instruction. The State argued that White did not apply because the charges for especially aggravated kidnapping and especially aggravated robbery involved different victims. Id. at *14. The majority of the panel rejected the State's argument, predicated on Elliot, noting that "[o]ur supreme court never said in the Anthony/Dixon/White line of cases that the fact that the victim of the kidnapping was different than the named victim of the accompanying felony eliminated the need for due process analysis." Id. at *15.

A dissenting opinion filed in Bowman reasoned as follows:

The kidnapping offenses found in chapter 13 of Title 39, Part 3 of Tennessee Code Annotated and the robbery offenses found in the same chapter

-13-

and title, but in Part 4 are both classified by our legislature as offenses against the person of another. The two distinct offenses of especially aggravated kidnapping of [the wife] and the especially aggravated robbery of [the husband] are not "accompanying" felonies to each other, even though they did occur at virtually the same time and in the same house. No robbery of [the wife] accompanied the especially aggravated kidnapping of [the wife]. No kidnapping offense of [the husband] accompanied the especially aggravated robbery of [the husband]. As there was no "accompanying felony" to the especially aggravated kidnapping charge, there was no need for the additional jury instruction set forth in White.

Id. at *17. (Woodall, J., dissenting).

The majority opinion in Bowman also relied upon this Court's opinion in State v. Michael L. Powell, No. E2011-00155-CCA-R3-CD, 2012 WL 1655279 (Tenn. Crim. App. May 10, 2012). We respectfully disagree with the Bowman majority's analysis of Powell. Powell involved a home invasion in which the two defendants and a third man accosted three people. The defendants were charged with aggravated robbery as to each of the three people and with especially aggravated kidnapping as to two of the people. The jury convicted the defendants as charged, and the defendants raised an Anthony challenge on direct appeal. While the appeal was pending, our supreme court issued its decision in White. The Powell court framed the issue as follows:

In the instant case, the proof in support of the Defendants' especially aggravated kidnapping convictions consists of [victim 1's] testimony that, after [the defendant] Powell and the third man (Sean) took property from [victim 1 and victim 2] in the immediate vicinity of [victim 3's] bedroom, Powell, accompanied by Sean, forced [victim 1 and victim 2] into the kitchen at gunpoint, made them lie down, and ordered them to remain there. The proof also established, however, that [victim 1] had tried to stop the robbery of [victim 3] and that [the defendant] Horne remained with [victim 3] while Powell and Sean forced [victim 1 and victim 2] into another room. Therefore, the proof is susceptible of at least two interpretations: (1) that Powell and Sean removed [victim 1 and victim 2] from the scene of the robberies as discrete criminal activity after the robberies had been completed, or (2) that Powell and Sean were separating [victim 1 and victim 2] from [victim 3] so that Horne could proceed with the robbery of [victim 3] without further interference. Accordingly, the determination of whether the removal or confinement of [victim 1 and/or victim 2] constituted a substantial interference of either victim's liberty that was to a greater degree than necessary to commit the aggravated robbery of [victim 3] was a question of fact for the jury to resolve.

-14-

Id. at *9.  Accordingly, the unanimous Powell panel remanded the matter for a new trial on the kidnapping charges requiring inclusion of the White instruction.  Id.

This case presents a somewhat unique scenario.  The Defendant was charged with dual crimes – aggravated robbery and especially aggravated kidnapping – as against Mr. and Ms. Currie.  The Defendant was *not* charged with dual crimes as against the three child victims.  The Defendant's moving and detention of these three victims was not *necessary* to the Defendant's commission of the aggravated robbery of Mr. Currie or the aggravated robbery/aggravated assault of Ms. Currie.

Accordingly, we hold that the Defendant's due process rights were not violated by his convictions of the especially aggravated kidnappings of the three child victims and that he was not entitled to the White instruction as to these three counts.  Therefore, we affirm, again, the Defendant's convictions of the especially aggravated kidnappings of M.R., K.R., and A.R.

## Conclusion

Our previous opinion reversed the Defendant's convictions in counts seven and ten relative to the violation of Code section 39-17-1324 and remanded those counts for a new trial on the offense of employing a firearm during the commission of a dangerous felony predicated upon an aggravated burglary.  Additionally, our previous opinion modified the aggravated robbery conviction in count nine to a conviction of aggravated assault and remanded that count for resentencing.  Finally, our previous opinion reversed and dismissed the Defendant's firearm possession conviction in count eleven and dismissed that charge.  The supreme court's remand does not affect those holdings.

Upon our consideration of this case in light of White and Cecil, we conclude that the Defendant is entitled to a new trial on the especially aggravated kidnapping charges in counts one and two.  We also conclude that the Defendant is entitled to no relief from his three convictions of especially aggravated kidnapping entered on counts three, four, and five.  We affirm the Defendant's convictions and sentences as to those counts.

Accordingly, the case is remanded to the trial court for a new trial on counts one, two, seven, and ten, and for resentencing on count nine.

_____
JEFFREY S. BIVINS, JUDGE